**FIRST NATIONAL BANK IN PALM BEACH and Phillip D. O'Connell, Co-Trustees of a Trust Created by the Will of Michael A. Kelly, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 29453.

United States Court of Apepals, Fifth Circuit.

May 7, 1971.

Robert W. Rust, U. S. Atty., Lavinia L. Redd, Asst. U. S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Michael Osman, Asst. U. S. Atty., Miami, Fla., Meyer Rothwacks, Paul M. Ginsburg, Harry Baum, Michael L. Paup, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant.

Robert O. Rogers, Palm Beach, Fla., Andrew F. O'Connell, West Palm Beach, Fla., for plaintiffs-appellees.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This is a companion case with Florida National Bank at Lakeland, etc. v. United States, 443 F.2d 467 decided April 26, 5th Cir., 1971 and Miami Beach First National Bank, etc. v. United States, 443 F.2d 475 decided April 30, 5th Cir., 1971 in the sense that it deals with the allowability of a deduction from gross estate for estate tax purposes of a *remainder* to admitted charitable purposes in light of certain investment and management powers given to the trustees. The government claims these powers of investment and management authorized the trustees to invade the corpus to a degree appreciable enough to prevent the interest from being "presently ascertainable, and hence severable from the non-charitable interest" Regs. 20.2055–2a. The trial court found "the value of this charitable remainder was presently ascertainable" and entered judgment for the taxpayers for the amount which they had paid.

■ As we have heretofore discussed in the two companion cases, the principle to be applied in determining the deductibility of charitable remainders has been carefully delineated in four Supreme Court cases, Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Merchants Nat. Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Henslee v. Union Planters Bank, 335 U.S. 595, 69 S. Ct. 290, 93 L.Ed. 259 (1949); Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955), where, at page 199, 75 S.Ct. at page 235 the court said there must be "assurance that charity will receive the bequest or some *determinable* part of it" (emphasis added) to justify the deduction.

■ We deal here with § 2055(a) of the Internal Revenue Code of 1954 [1] and

---

1. This section (26 C.R.F. § 20.2055–2(a)) provides in part:

(a) *Remainders and similar interest. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the non-charitable interest.* The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in Sec. 20.2031–7. Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible. To determine the present value of such remainder use the appropriate factor from column 4 of Table I or Table II of Sec. 20.2031–7, whichever is applicable. * * *

(b) *Transfers subject to a condition or a power.* If, as of the date of decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, *no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. *If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that is subject to such power, not deductible had it been directly so bequeathed, de-*

the applicable regulations. The effect of the statute and regulations, as applied by the courts, is that a deduction for a charitable remainder is not allowable unless the interest is "presently ascertainable, and hence, severable from the noncharitable interest". (Regs. 20.2055a), which the Supreme Court defined as "fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co., *supra* at page 154, 49 S.Ct. at page 291; it is not deductible unless "the possibility that the charitable transfer will not become effective is so remote as to be negligible".

Against this conceded legal standard we must measure the remainder designated to religious purposes in this will. The relevant portions of the will are: the will as amended by codicil created a trust of the decedent's residuary estate, which was valued at death as $183,052.00. The trustees were to distribute the net income from this trust to decedent's 54 year old sister for life—with a guaranteed minimum of $100.00 per week.[2] Upon the death of the life beneficiary the corpus of the trust was to be paid over to the charitable beneficiary. Other relevant provisions of the will are as follows:

(a) Wherever in this, my Will, the words "my Executors" or "my Trustees" are used, such words shall be deemed to mean, refer to and include my Executors, or, as the case may be, my Trustees herein named, and their and each of their successors or successor.

(b) Wherever in this subdivision (b) or in subdivision (c) of this ITEM VII the words "my Executors" are used, such words shall be deemed to mean, refer to and include my Executors, and my trustees herein named, and their and each of their successors or successor.

(c) In addition to the powers, authorities, discretions and immunities now or hereafter given to executors and trustees by law, and in amplification (but not in limitation) thereof, I authorize and empower my Executors, in their sole and absolute discretion, to:

\* \* \* \* \* \*

(4) Pay, in their discretion, premium on bonds or other securities which they may purchase, and, in case my Executors shall purchase for or hold in my estate or any of the trusts hereby created any bonds or other securities at a cost or value in excess of the principal amount thereof, the entire interest or income therefrom shall be paid to the respective persons entitled to receive the income of the fund whereof such bonds or securities form a part, without deduction for the amortization or recoupment of such excess.

(5) Invest and reinvest the principal of my estate and/or of any of the trusts hereby created, or any part thereof, or any accumulated income, in any form of investment which they, in their sole and absolute discretion, shall determine, and I direct that they shall not be restricted to investments of the nature and kind prescribed by law for the investment of trust funds; and I further direct that they shall not be liable or responsible to any person or persons interested in my estate or in any of said trusts for any depreciation in or loss of principal or income occasioned by any such investment of principal or by the retention thereof.

---

*vised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power.* \* \* \* (Emphasis added.)

2. The trial court determined that this minimum could be maintained without direct encroachment on the corpus. The government does not appeal from this determination. It was, in fact, stipulated that the income would "exceed $5,200 per year" for the sister's expectance of 20.47 years.

\*   \*   \*   \*   \*   \*

(9) Determine, in any case where doubt exists under the facts or applicable law, whether any charges, expenses or disbursements incurred or paid by them shall be charged against the principal or the income of my estate or any of the trusts hereby created, and the extent or proportion of any such charge, expense or disbursement which is to be charged against principal and/or income, and I direct that the judgment and decision of my Executors with respect thereto shall be conclusive and binding upon my estate and said trusts and upon all persons interested therein.

(10) Treat any extraordinary dividends payable in any stock or other securities, and also any *liquidating dividends*, as income and not as principal, or partly as income and partly as principal, but ordinary dividends paid in any stock or other securities regularly by a corporation in lieu of, or in addition to, regular cash dividends, and all dividends accumulated on any preferred stock after receipt or acquisition of such preferred stock by Executors shall, if declared, be considered income and not principal, provided, however, that in any case where doubt exists under the facts or applicable law, the determination of my Executors as to whether any dividends shall be apportioned or allocated in whole or in part to principal or income, and their apportionment or allocation thereof, shall be conclusive and binding upon my estate and said trusts and upon all persons interested therein. (Emphasis added.)

The government highlights several provisions of this will which, it claims, either direct, or give the trustees discretion, to invade the corpus of the trust for the benefit of the life tenant.

The first of these is the authority given in subparagraph (c) above "in amplification (but not in limitation) to the powers, authorities, discretions and immunities now or hereafter given to executors and trustees by law \* \* \* in

their sole and absolute discretion, to" buy bonds and other securities at a premium, in which event "the entire interest or income therefrom *shall* be paid to the life beneficiary without deduction for the amortization or recoupment of such excess." (Emphasis added) As an illustration as to how this provision could result in reducing corpus in favor of the life beneficiary we need to look only to one of the assets received by the executors at the death of the decedent. At that time he owned a $10,000 bond of the Standard Oil Company of Indiana. It was valued for estate tax purposes at $11,408.33. If this bond was held until maturity and the trustees did not amortize the premium, the corpus of the trust would suffer a loss of $1,408.33. Moreover, the trustees were given complete authority to invest and reinvest in securities of this kind, so that they might, by the literal authorization of the will, "pay, in their discretion, premiums on bonds" and they would then be entitled to pay the entire income from the bonds "without deduction for the amortization or recoupment of such excess." A further power to encroach on the corpus of the estate existed in the provision of paragraph 10, supra, which authorized the trustees to "treat any extraordinary dividends payable in any stock or other securities \* \* \* as income and not as principal" with the further provision that "the determination of my executors as to whether any dividends shall be apportioned or allocated in whole or in part to principal or income, and their apportionment or allocation thereof, shall be conclusive and binding upon my estate and said trusts and upon all persons interested therein." Under this provision, of course, the executors had full authority to treat stock dividends paid by companies in which the executors held stock as income rather than as accretions to corpus, which they really are. It is recognized in the Florida law and the uniform Principal and Income Act, Florida Statutes Annotated § 690.06, that "stock dividends should inure to the benefit of the cor-

pus." Stock dividends, of course, are merely a redistribution of the number of shares representing the assets of a corporation. Certainly, to the extent that stock dividends represent appreciation in the value of the underlying assets of the corporation, rather than income to it they represent accretions to principal.

Moreover, the decedent also authorized the trustees expressly to treat "liquidating dividends" as income. Obviously, the distribution of a dividend by distributing the assets of a corporation on its dissolution is a distribution of principal. Nevertheless, this will expressly authorized the trustees to treat these dividends as income. The trial court found that "liquidating dividends, indeed, involved a return of capital." However, the court said "but here again, the possibility that the trust corpus will be affected to any significant degree is remote." Principally, however, the trial court seemed to base its judgment on the following statement: "further, notwithstanding the broad powers conferred by the instrument, the trustees are charged with the duty of prudent and good faith management of the trust, from an investment standpoint, and are fiduciaries of the remainderman as well as the life tenant. It must be presumed, therefore, that the trustees could not and would not arbitrarily and capriciously hinder the interest in the remainderman in this manner."

We have stated in the case of The Miami Beach First National Bank v. United States of America, supra, it is clear that when extraordinary powers of this kind are given to the fiduciary they are intended to modify the general rule with respect to the obligations to a fiduciary to deal with an even hand with respect to the life tenant as against the remainderman when no such extraordinary powers are expressed. However, as illustrated by the Florida case of Wallace v. Julier, 147 Fla. 420, 3 So.2d 711, the Florida courts recognized the power of a decedent expressly to authorize his trustees to favor a life tenant by permitting the trustees to classify and distribute "accretions and increases" to the life tenant, notwithstanding the general obligation of a fiduciary in the absence of such extraordinary powers as are given in this will.

We find nothing in general fiduciary law nor the laws of Florida that would cause the courts to intervene if the trustees in the exercise of the powers given in this will were to do precisely what the will authorized them to do with respect to the distribution of liquidating dividends to the life beneficiaries if they received any during the administration of the trust.

We think the rule to be applied here is well stated by Scott in § 233.5. See III Scott, Trusts, § 233.5:

> By the terms of the trust the trustees may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, * * *. Where such a power is conferred upon the trustee, his determination is controlling unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. *The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules.* (Emphasis added.)

A further basis for encroachment on the corpus in favor of the life tenant is that provision of the will which authorizes the trustees to "determine, in any case where doubt exists under the facts that or applicable law, whether any charges, expenses or disbursements incurred or paid by them shall be charged against the principal or the income of my estate or any of the trusts hereby created." We have already seen the powers mentioned here are stated by the testator to be "in addition to the powers, authorities, discretions and immunities

now or hereafter given to executors and trustees by law *and in amplification (but not limitation)*." As we stated in the *Miami Beach First National Bank case, supra,* the power to charge trustees commissions, taxes on income and any property or intangible taxes that may be levied against the estate to principal rather than income clearly permits an invasion of corpus. The appellees here clearly concede in their brief "appellees do not contend that the trustees could not exercise their discretion and allocate some receipt that are normally classified as principal to income or vice versa. Neither do they contend that such would not have any effect on the amount that charity eventually receives." This concession, however they say does not affect the result because "the same is true of investment decisions. It is only submitted that it is presumed that these trustees will act in good faith and such is all that is required." It is our view that appellees failed to comprehend the requirement that fiduciaries "act in good faith." There can be no contention that trustees are not acting in good faith if they honestly exercise authority expressly granted by the will.

The appellees read too much into the quoted decision of Wallace v. Julier, supra.

"The discretions * * * vested * * * [in trustees will] * * * not be interfered with or controlled by the courts so long as it is honestly and reasonably exercised by him but the will does not confer an arbitrary or capricious authority. If it appears from the conduct of the trustee that he is disposing of the rents, income, and profits, not in carrying out the purpose of the trust, but in selfish disregard of the claims of other beneficiaries, so that the design of the other testatrix is defeated, then it is the duty of the court to interfere. * * * *"

As pointed out by Scott, supra, "the very purpose in conferring the power upon [the trustee] is to enable him to depart from the usual rules." In fact, the Florida Supreme Court in the *Julier* case directed that the discretionary power given to the trustees to consider what would normally be corpus, that is to say, "accretions or increases" as income be given effect, although trustees dealing even handedly between life tenants and remainderman would not be permitted to convert what was truly corpus into what was interest. The court very properly determined that when the trustees carry out an extraordinary discretion in the manner which was not inconsistent with the obvious purpose of the testator, they were not in violation of the standard of fairness and good faith.

Lest it be thought that the courts approval of the chancellors disallowance of a charge made by the trustees in the *Julier* case against income instead of charging it against corpus is inconsistent with what we have said here, we call attention to the fact that nowhere in the report of the *Julier* case does it appear that the will, which was there before the court for construction, expressly authorized the trustees to treat expenditures, costs and charges against the estate in accordance with their full and complete discretion, as is contained in paragraph 9 of this will. The court, therefore, doubtless was applying the general rule that where trustees made an improper charge against the life tenants for an item of expenditure that should, by good faith and even handed dealing as between the two successive beneficiaries, have been charged to principal, because *no express authorization permitted them* to do otherwise, such an allocation would be set aside by the courts.

In sum, we conclude that the trustees here could in the best of faith in carrying out recognized fiduciary principles invade corpus in the manner suggested above to a material extent which, though not measurable, would make impossible the valuation in dollar amounts of the remainder interest that would be left to go to the named charities.

The appellees here have an alternative basis for contending that a substantial deduction for charitable purposes should

have been allowed by the trial court, even were the full amount of the remainder not deductible as we have found to be the case here. This alternative claim was not reached by the trial court, because that court determined that the charitable deduction, as contended for by the executors, should be allowed. The alternative claim, briefly stated, is that the decedent Kelly and his friend, one McNamara, had in 1938 executed a mutual contract to make wills, which contract, it is contended, as amended by subsequent amendment, provided that each party would leave his residuary estate to the other in exchange for the other's agreeing to leave his entire estate to certain designated charities. McNamara died in 1954 and his estate was distributed to Kelly, the decedent here, in accordance with McNamara's will and in accordance with the contract. Subsequently, Kelly executed the will with which we are concerned. This will, although leaving what may turn out to be a very substantial remainder to charity, is quite dissimilar from that agreed upon in the contract, did not contain direct bequest of the entire estate of decedent to the named charities. During the period of probate of this will the executors filed a suit for declaratory judgment, seeking instruction of the appropriate Florida court in connection with the contract to execute joint wills. All parties who could conceivably have an interest in either the estate or the proceeds from the contract were notified of the pendency of the litigation, and the record discloses, without more, that on February 23, 1965 an order was entered in the court of the county judge in and for Palm Beach County, Florida, stating that a proposed settlement was consented to and approved by the parties in interest and was to the best interest of the estate; whereupon, it was ordered adjudged and decreed that the executors effect settlement with two out of the four religious orders referred to in the original contract, by the payment to each of these two the sum of $42,-000, that is to say, a total of $84,000. The order further provided that the executors "shall obtain, in exchange for said payments, a stipulation for a decree adverse to the said parties claims against this estate * * * "

In substance, the trustees of the estate contend that the sum of $84,000 should be deducted from the estate for estate tax purposes under the charitable deduction provisions, regardless of whether the provisions giving the remainder to the other religious charity is recognized.

The government counters on the ground that the alternative claim was not mentioned as a basis for the claim for refund, contended by the government to be a necessary prelude to the prosecution of a successful claim. See Angelus Milling Co. v. Commissioner of Internal Revenue, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945) and Alabama By-Products Corp. v. Patterson, 258 F.2d 892, 900 (5th Cir., 1958). To this contention the appellees respond that the government did not object at the time of the pre-trial hearing or at any time during the hearing in the trial court to the alternative claim, other than to object to any testimony relating to it on the ground that it was not "relevant" to the only issue before the court.

The parties, of course, differ further with respect to what effect is to be given to a payment made pursuant to litigation seeking specific performance of a contract to execute a will; it being contended by the government that any amounts paid out in satisfaction of such a contention would be the payment of a "claim against the estate" and not satisfaction of a bequest or a gift under the will; the appellees, of course, contending exactly to the contrary, that under the Florida law if the contract is recognized the persons taking under it take as bequests under the will.

While the equities strongly favor the recognition by the tax gatherer of the

undisputed fact that the estate actually has been reduced to the extent of $84,-000 by payments to undisputed charitable purposes [3] there remain, unfortunately, a number of problems relating to the actual disposition of the matter litigated in the state court that it would appear improper for us to attempt to resolve issue on appeal. For instance, although neither party suggests this in briefs now before us, a glance at the actual terms of the contract appear on the surface only to require that Mr. Kelly make an outright bequest to the named charities *if his death should occur within 90 days of the death of Mr. McNamara.* This, of course, did not happen. In fact it was not until after 90 days following the death of McNamara that Mr. Kelly made the will with which we are now concerned. The Kelly life beneficiaries raised this point in the case pending in the county court of Palm Beach County. Since the trial court did not give any consideration to the validity of the contract to execute wills (it appearing not to have been executed with the formality required for a will in the state of Florida) nor whether the contract, if properly executed and binding, was actually breached by Mr. Kelly, and the court not having undertaken to pass upon the issue of a possible waiver by the government of any objection of the failure to include the alternative claim in the claim for refund, we think that as to the alternative claim the case must be REMANDED to the district court for further disposition. It should be said, of course, that by mentioning certain aspects of the contract matter, we express no opinion as to what disposition should be made by the trial court of this alternative claim.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

3. Equities so strong, in fact, that it may not be inappropriate for the court to suggest that the Internal Revenue Service may conclude with the taxpayer that there is some basis for settlement or adjustment of this issue upon remand.