Ella Young ATWELL and T. W. Mohle, As Independent Executors of the Estate of Charles S. Atwell, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 68-H-1012.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 29, 1972.

John G. Heard, Thomas H. Wharton, Jr., of Vinson, Elkins, Searls & Smith, Houston, Tex., for plaintiffs.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Howard A. Weinberger, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

CARL O. BUE, Jr., District Judge.

In this tax refund action which was tried to the Court, plaintiffs as executors of the estate of Charles S. Atwell seek the recovery of federal estate taxes paid in the amount of $231,476.89 pursuant to 28 U.S.C. § 1346.

The facts necessary for decision are not in dispute. The decedent, a Texas resident, died testate on October 19, 1961. All of decedent's Louisiana property was devised to the National Society of the Daughters of the American Revolution (DAR) subject to a usufruct in his wife. The remainder, which was the

bulk of his estate, was devised to the plaintiffs, decedent's wife and a close friend, as trustees of the Charles S. Atwell Testamentary Trust. The testamentary trust is to terminate upon the death of decedent's wife. The trust instrument provided for the trust income to be paid in specified amounts not to exceed $11,500 per year to three named individuals. The balance of the income was to be paid annually to his wife. Upon termination of the trust, $50,000 of the corpus of the trust is to be distributed to the Texas A & M Development Fund and the balance to the DAR. Both of these institutions are qualified charities under the provisions of 26 U.S.C. § 2055. Plaintiffs timely filed a federal estate tax return for the estate in which a claim was made for a charitable deduction in the amount of $612,-480. Upon examination of the return the charitable deduction was disallowed in its entirety on the grounds that the remainder interest passing to the charities was "unascertainable and nonseverable" due to the broad administrative powers vested in the trustees, particularly the power to allocate receipts and disbursements between corpus and income at their discretion. The Louisiana property subject to a usufruct in decedent's wife did not qualify for a deduction, since the rights enjoyed by the usufructuary render the charitable remainder unascertainable. As a result of the disallowance of the charitable deduction, a tax assessment of $193,932.47, plus assessed interest of $37,494.42 was duly forthcoming. On April 8, 1966, the estate satisfied this assessment upon payment of $231,476.89.

The plaintiffs strenuously urge that there are no direct or indirect powers of invasion of the charitable remainder for the benefit of the life tenant since the broad administrative powers conferred upon the trustees were intended only to provide flexibility in the trust's management. It is alleged that the will reflects no intention, directly or indirectly, to provide a grant of dispositive flexibility to the trustees. It is further asserted that the unquestioned ef-

fect of the stringent controls afforded by the express intention of the decedent and the laws of Texas governing trust instruments is to insure that the trustees have neither power nor authority to invade indirectly or dissipate the corpus of the trust for the benefit of the life tenant. The government, on the other hand, maintains that the sum of the administrative powers granted to the trustees by the will would allow, if not directly approve, an invasion and subsequent depletion of the corpus of the trust with the result that the amount the charities will eventually take is unascertainable.

A cursory examination of the decedent's will reflects that there are no provisions in the instrument which make express provision for a direct invasion of the corpus of the trust for the benefit of the income beneficiary. The trust provisions which the government avers would sanction an indirect invasion of the trust corpus are as follows:

### PART THREE

### ADMINISTRATIVE AND MISCELLANEOUS PROVISIONS

7.

.    .    .    .    .    .

I suggest to the Executors and Trustees that they employ a bank as fiscal agent to handle the clerical details of the administration of my estate. It is my opinion that this is an efficient and orderly manner in which to handle what would otherwise be the most burdensome part of the administration of my estate and the Trust Estates, and, without limiting the exonerations given in Paragraph 21, the Executors and Trustees shall have no responsibility or liability for any loss due to the actions of any such fiscal agent. The fiscal agent may be changed from time to time in the discretion of the Executors and Trustees.

.    .    .    .    .    .

15. The revenues, receipts, proceeds, disbursements, expenses, accruals, and losses of each Trust shall be allocated

or apportioned between corpus and income in the discretion of the Trustees, and the determination by the Trustees need not necessarily be in accordance with the provisions of the Texas Trust Act, which shall control only if such discretions and opinion are not exercised by the Trustees. From the revenues, receipts and proceeds allocated or apportioned to income of a Trust there shall be deducted the disbursements, expenses, accruals and losses allocated or apportioned to income of such Trust, and the excess, if any, of such revenues, receipts and proceeds over such disbursements, expenses, accruals and losses shall be the "net income" of such Trust Estate.

.    .    .    .    .    .

20.    To carry out the purposes of the separate Trusts created and continued herein and subject to any limitations stated elsewhere herein, in addition to the rights, privileges and powers elsewhere herein conferred upon and vested in the Trustees of such Trusts and those now or hereafter conferred by law, the Trustees of such Trusts, respectively and separately as to each Trust, shall also have, but not by way of limitation, the following rights, privileges and powers:

(a) To hold, manage, control, collect and use (including the power to hold any property unproductive of income and the power to retain stock of any Trustee) the Trust Estate in accordance with the terms of this instrument.

(b) To sell (for cash or on credit, or both), exchange, or otherwise dispose of, all or any part of the Trust Estate, publicly or privately, and to lease, rent, loan mortgage (including the making of purchase money mortgages), pledge or otherwise encumber the whole or any part of the Trust Estate, and to loan or borrow money in any manner (including by joint and several obligations) with or without security. All privileges and powers set forth in this instrument may be exercised upon such terms, regardless of the duration of the Trust, as the Trustees may deem advisable unless the contrary is expressly stated.

(c) To invest, reinvest, pay, expend or otherwise apply the Trust Estate for any purpose, in any manner, and in property of any description whatsoever (including, but not limited to, oil, gas and mineral interests, common stock, shares of investment trusts or companies, unsecured obligations, non-income producing and wasting property, and property outside of Texas); to make, and, or, hold investments of any part of the Trust Estate in common or undivided interests with any other persons or entities, including property in which the Trustees, in their own right or otherwise, may hold a common or undivided interest, and to deal with, buy from, or sell to any person, corporation or other entity, regardless of any relationship of the Trustees to such person, corporation, or entity. Such investment powers shall not be restricted to any class of investments which fiduciaries under any character of trust are permitted by law or any regulation to make, and and may be exercised without regard to any requirement of diversification as to kind or amount. The Trustees may commence and, or, continue operation of any business, partnership or otherwise, with any part, or all, of the Trust Estate and may incorporate such business, and may liquidate any such entity.

(d) To make oil, gas and mineral leases covering any lands or mineral interests at any time forming a part of the Trust Estate  .  .  .  .

.    .    .    .    .    .

(h) This instrument shall always be construed in favor of the validity of any act or omission by or of the Trustees, and the Trustees are also authorized to exercise all the rights, powers, options and privileges now or hereafter granted to, provided

for, or vested in Trustees under the Texas Trust Act, and, insofar as is possible, no subsequent legislation or regulation shall be in limitation of the rights, powers or privileges granted in this Will or in said Texas Trust Act as it exists at the time of the making of this Will.

Generally and except as limited by the foregoing, the Trustees shall hold, manage, control, use, invest and re-invest, and dispose of the Trust Estate in the sole discretion of the Trustees in all things and under all circum-stances, and to the same extent as if the Trustees were the owners thereof, in fee simple, and all rights, privileges and powers given the Trustees may be exercised without application to any court.

.  .  .  .  .  .

21. No Executor or Trustee shall be responsible or held liable for any loss or depreciation in value of my estate or the Trust Estates unless caused by such Executor's or Trustee's gross neglect, bad faith or fraud. No Executor or Trustee shall be respons-ible or held liable for any act of any agent of such Executor or Trustee if such Executor or Trustee has exer-cised reasonable care in the employ-ment of such agent, and any responsi-bility or liability of my estate shall be solely that of such agent.

For the purpose of encouraging char-itable contributions section 2055, Title 26 U.S.C., authorizes a deduction from a decedent's gross estate of the amount of bequests "to or for the use of any cor-poration organized and operated exclu-sively for religious, charitable, scientific, literary, or educational purposes . . . ." However, the Treasury regulations qual-ify this section by providing that:

(a) Remainders and similar interests. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and

hence severable from the noncharitable interest.

.  .  .  .  .  .

(b) Transfers subject to a condition or a power. If . . . a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable trans-fer will not become effective is so re-mote as to be negligible.

26 C.F.R. § 20.2055–2. These regulations were apparently distilled from a quintet of Supreme Court cases which considered trust provisions that empowered trustees to invade directly the trust corpus under certain specifically enumerated circum-stances and held that a possibility of an invasion of the corpus which is not sub-ject to some ready standard is sufficient to preclude a charitable deduction. Thus, in Merchants National Bank of Boston v. Commissioner of Internal Rev-enue, 320 U.S. 256, 260–261, 64 S.Ct. 108, 111, 88 L.Ed. 35 (1943), it was indicated that:

Whatever may be said with respect to computing the present value of the bequest of the testator who dilutes his charity only to the extent of first affording specific private legatees the usufruct of his property for a fixed period, a different problem is present-ed by the testator who, preferring to *insure* the comfort and happiness of his private legatees, hedges his philan-thropy, and permits invasion of the corpus for their benefit. At the very least a possibility that part of the principal will be used is then created, and the present value of the remainder which the charity will receive becomes less readily ascertainable. Not infre-quently the standards by which the extent of permissible diversion of cor-pus is to be measured embrace factors which cannot be accounted for accu-rately by reliable statistical data and techniques. Since therefore, neither the amount which the private bene-

ficiary will use nor the present value of the gift can be computed, deduction is not permitted.

*Accord* Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667 (1928); Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Henslee v. Union Planters National Bank and Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Commissioner of Internal Revenue v. Estate of Sternberger, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

In Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3d Cir. 1971), it was held that certain administrative powers conferred upon the trustee rendered the value of the charitable remainder unascertainable. These powers included the discretion to invest in various types of assets and to apportion between income and principal all receipts and disbursements of the trust. The latter power was earmarked by the Court as being most significant. The Court concluded that the standard established by the five Supreme Court cases was applicable to indirect powers of invasion arising out of broad administrative provisions. It was indicated that:

> Here the decedent's dispositive intent does not reveal any desire to favor the life tenants over the remaindermen, but decedent's administrative intent was to rely solely upon the trustee's judgment and discretion rather than upon the normal rules of state law governing the administration of trusts. Such broad powers have been previously recognized as enabling a trustee, acting safely within his prerogatives, to shift "very substantially . . . the economic benefits of the trusts between the life tenants and the remaindermen."

*Id.* at 1288. The Court concluded that:

> The issue still persists whether the power of the trustee is limited in a measurable manner. The answer to this question for federal tax purposes

cannot be determined by an inquiry into the care or carelessness of the drafter. Estate tax questions regarding powers must be answered by reference to possibilities, even though the powers granted may never be exercised. Under the inquiry regarding possibilities, the amount to be received by the charities here is not "presently ascertainable."

*Id.* at 1289.

The Fifth Circuit in a trilogy of cases has recently treated the issue at hand and resolved it against the taxpayer. In First National Bank in Palm Beach v. United States, 443 F.2d 480 (5th Cir. 1971), the administrative powers conferred upon the trustee by the trust instrument can enumerated as follows: (1) to increase the income of the life beneficiary by paying premiums on bonds; (2) to invest the principal in unlimited types of investments; (3) to allocate between income and principal the charges, expenses and disbursements; (4) to treat liquidated dividends, stock dividends, and extraordinary dividends as income; and (5) to exercise specific powers in addition to those provided by state statute. The power to apportion receipts and expenditures between principal and income was viewed as being highly significant. The Court in its search for an appropriate standard indicated that:

> [I]t is clear that when extraordinary powers of this kind are given to the fiduciary they are intended to modify the general rule with respect to the obligations to a fiduciary to deal with an even hand with respect to the life tenant as against the remainderman when no such extraordinary powers are expressed.

*Id.* at 484. After surveying the applicable Florida law the Court concluded that:

> [T]he trustees here could in the best of faith in carrying out recognized fiduciary principles invade corpus in the manner suggested above to a material extent which, though not measurable, would make impossible the valu-

ation in dollar amounts of the remainder interest that would be left to go to the named charities.

*Id.* at 485. *Accord* Miami Beach First National Bank v. United States, 443 F.2d 475 (5th Cir. 1971); Florida Bank at Lakeland v. United States, 443 F.2d 467 (5th Cir. 1971).

In a subsequently decided case, Doss v. United States, 326 F.Supp. 1320 (N.D. Tex.1971), it was concluded that there was an absence of any administrative powers vested in the trustee which would, either expressly or impliedly, permit an invasion of the remainder of the estate with the result that the remainder was ascertainable and, therefore, deductible. The Court in *Doss* felt it was necessary to ascertain which administrative powers were present in its fact situation that were also to be found in the Fifth Circuit trilogy. It was indicated that the sum of the powers found to be present could, when viewed cumulatively, prevent ascertainability. The Court concluded that only one of these powers was present—that which permitted unlimited investments at the discretion of the trustees. The absence of a provision which gave the trustees discretion to allocate receipts and expenses between income and principal was deemed crucial. The Court emphasized that it was the latter power which "has been a factor of considerate weight in cases where the charitable deduction has been disallowed." *Id.* at 1323.

■ It is readily apparent that the cases necessarily place great emphasis on the particular language of the trust instrument involved as well as the trust law of the applicable state. The emerging standard can be capsuled in a two step procedure as follows: First, the language of the particular will or trust instrument, in conjunction with the testator's ascertainable intent, must be canvassed to determine if there are broad administrative powers which can be exercised to dissipate the charitable remainder. However, the fact that there are broad administrative powers does not answer the question of whether or not the remainder interest is ascertainable; this necessitates an additional inquiry. Second, if such powers are found to be present, then the applicable state law must be scrutinized to determine if state courts or administrative agencies in enforcing such law would restrict the powers of the trustee to a measurable and ascertainable standard. In arriving at this answer, the guiding determinant is whether or not there is any real possibility that the interest of the charitable remainderman will be invaded for the benefit of the life tenant.

■ Turning now to the trust law of Texas, it is a fundamental principle that a will must be construed in its entirety and all of its provisions harmonized in such a manner so that none are rendered devoid of meaning. The intention of the testator should be ascertained from the instrument itself. St. Marks Episcopal Church, Mt. Pleasant Texas v. Lowry, 271 S.W.2d 681 (Tex.Civ.App.— Fort Worth 1954, writ ref'd n. r. e.); Thorman v. Carr, 408 S.W.2d 259 (Tex. Civ.App.—San Antonio 1966), writ ref'd n. r. e., 412 S.W.2d 45 (Tex.Sup.1967). The instant will unambiguously provides for broad administrative powers in the trustees. Paragraph 15 of the will grants unqualified discretion to the trustees to allocate between principal and income all receipts and disbursements. As to any limitations to be imposed on the trustees' discretion, the testator made it clear that this "determination . . . need not necessarily be in accordance with the provisions of the Texas Trust Act, which shall control only if such discretion . . . [is] not exercised by the Trustees." In this connection there is no provision for the maintenance of a sinking fund or depletion or depreciation reserve. The trustees necessarily have the power to allocate all receipts without diminution to income and all expenses to principal. It is apparent that the grant of this discretion on allocation is broad enough to permit the non-amortization of bond premiums as well as to sanction the allocation of stock div-

idends and accretions in value of capital assets to the income beneficiaries. Paragraph 20 provides that the trustees shall have powers in addition to those conferred by law: (1) to manage, sell, mortgage, lease, and loan any part of the trust estate; (2) to make unrestricted and unlimited investment decisions; (3) to enter oil and gas mineral leases; (4) to self-deal. Thus, sub-paragraphs 20(b) and 20(c) grant unlimited discretion to the trustees to invest in any type of assets. The trustees in accordance with this discretion could invest in wasting assets or assets with a more than normal rate of return. In addition, the trustees are authorized to deal with and buy or sell to any person without regard to the relationship of that person to the trustees. This is often referred to as a "self-dealing" provision. Sub-paragraph 20(h) provides for the maximum utilization of the trustee's discretion. That sub-paragraph recites that the trust "instrument shall always be construed in favor of the validity of any act or omission by or of the Trustees . . . ." Paragraph 20 also grants the trustees such powers as they would possess if they were owners of the trust estate in fee simple. Paragraph 21 provides that the trustees shall not be responsible or held liable for any loss or depreciation in value of the trust estate unless caused by their gross neglect, bad faith, or fraud. It is apparent that the testator's intent as reflected by the trust instrument was to hedge his charitable contributions by placing complete reliance upon the trustees to control the assets of the trust.

■ It is next necessary to ascertain what limitations, if any, are provided by the applicable state law to restrict the broad discretion of the trustees. It is a fundamental principle that the Texas Trust Act was intended and in practice functions "to supplement rather than to supplant the desires of a trustor." St. Marks Episcopal Church, Mt. Pleasant, Texas v. Lowry, 271 S.W. 2d 681 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.). Thus, when extraordinary powers, or powers beyond the scope of the Trust Act, are conferred upon a trustee, they are necessarily intended to modify the general fiduciary rules such as that which requires a fiduciary to deal evenly with the life tenant and remainderman. Accordingly, it is not an abuse of discretion for the trustee to go beyond the limitations applicable when no specific powers are conferred upon him. The appropriate rule can be stated as follows:

By the terms of the trust the trustees may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, and may be empowered to determine what expenditures should be paid out of income and what expenditures out of principal or to apportion expenditures between income and principal. Where such a power is conferred upon the trustee, his determination is controlling unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules.

III A. Scott, The Law of Trusts § 233.5, at 1932 (3d ed. 1967). However, Texas law prohibits the trustee from making a brash bookkeeping entry which would have the effect to transfer an asset belonging to corpus to the life beneficiaries as income if it would run afoul of the generally accepted fiduciary principles. Thorman v. Carr, 408 S.W.2d 259 (Tex. Civ.App.—San Antonio 1966), writ ref'd n. r. e., 412 S.W.2d 45 (Tex.Sup.1967). Nevertheless, Texas law specifically allows a testator to grant discretion which may be exercised contrary to the provisions of the Texas Trust Act. St. Marks Episcopal Church, Mt. Pleasant, Texas v.

Lowry, 271 S.W.2d 681 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.). In *St. Marks Episcopal Church* the testator explicitly indicated that only the provisions of the Texas Trust Act which were not in conflict with the provisions contained in the trust instrument should apply. The provisions of the Trust Act were examined in reference to section 33 which provides that mineral royalties are to be apportioned in such a manner that 27½ percent of the total royalties should go to principal. However, it was noted that section 26 of the Act provides that the testator has the right to determine the manner of ascertainment of income and principal. Only when the testator fails to do so does section 33 become operative. The Court held that the will, when construed as a whole including the provision which rendered the Texas Trust Act inapplicable, reflects an intention by the testator that all income from the trust was to be distributed solely to the life beneficiary.

In Thorman v. Carr, 408 S.W.2d 259 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e., 412 S.W.2d 45 (Tex.Sup. 1967), it was held that proceeds arising from the sale of a bond and investment company stock could not be allocated to income simply by the authority conferred on the trustee to make allocations in his discretion. With reference to this case holding, two observations need be made. One, the trustee attempted by what in essence was a brash bookkeeping entry to transfer the income beneficiary that which was clearly principal. *See* Miami Beach First National Bank v. United States, 443 F.2d 475, 479 (5th Cir. 1971). Second, there was no provision in the trust rendering the Texas Trust Act inapplicable. The Court, however, did hold that the appreciation in value of the stock which occurred between the time the trust was instituted and the date of sale could, in the trustees' discretion, be allocated to income.

There are no state administrative agencies in Texas which supervise a charitable trust in such a manner so as to restrict the broad grant of trustees' discretion. The Bond and Charitable Trust Division of the Texas Attorney General's office is charged with the duty of protecting the public's interest with regard to charitable trusts. Tex.Rev.Civ.Stat.Ann. art. 4412a. However, this supervision is on a voluntary basis, since this agency does not have statutory authority to require the trust instruments, accountings, federal tax returns, inventories or other data be made available to it. In fact, if a specific named charity is involved, the Attorney General's office does not even assume primary responsibility for representing the public's interest in the charity. Transcript, at 85–86. As might be expected in this instance, the trustees have never made available to the Attorney General's office the will creating the instant trust, yearly or other periodic financial information, annual inventories of investments or any statements reflecting income, expenditures or allocations of the receipts and disbursements between income and principal.

The inescapable conclusion which this Court reaches is that the Texas Trust laws are as flexible as those of Florida which were fully explored in the *First National Bank in Palm Beach* case. Thus, when trustees are vested with explicit discretion in accord with the testator's intention, such discretion being clearly ascertainable from the trust instrument, the Texas courts will not attempt to substitute their judgment for that of the trustees unless it is a clear instance of malfeasance or misfeasance on the part of the trustees. The result is that:

> The trustees here could in the best of faith in carrying out recognized fiduciary principles invade corpus in the manner suggested above to a material extent which, though not measurable, would make impossible the valuation in dollar amounts of the remainder interest that would be left to go to the named charities.

First National Bank in Palm Beach v. United States, 443 F.2d 480, 485 (5th Cir. 1971). While decedent's dispositive

**434**

intent is devoid of any preference between the life tenant and the remainderman, decedent's administrative intent indicates that he chose to place complete reliance upon the judgment of the trustees to the exclusion of the applicable law encompassed within the Texas Trust Act. Although the powers conferred upon the trustees may never be exercised, the inquiry must be centered on the possibility that they will be so exercised with the result that significant economic benefits will be shifted from the remainderman to the life tenants. *See* Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3d Cir. 1971).

■ Similarly, the Louisiana property bequeathed directly to charity but subject to a usufruct in decedent's wife does not qualify for a charitable deduction to the estate. The rights enjoyed by the usufructuary necessarily render the charitable remainder unascertainable. Plaintiffs have conceded that no deduction is allowable for the value of the interest in any oil and gas properties situated in Louisiana which were producing at the time of decedent's death, but urge that a deduction is allowable for the remainder interest of such properties exclusive of the producing oil and gas properties. However, plaintiffs have failed to present any evidence at trial which would support such a deduction. They have not established the value of this remainder interest in accordance with the applicable Treasury regulations, 26 C.F.R. § 20.2031–7, and Rev.Rul. 60–162, 1960–1 Cum.Bull. 376.

The burden of proof is upon plaintiffs to establish that the charities will receive benefits commensurate with the amount of the tax deduction previously allowed. This they have not done. Accordingly, the charitable remainder of the trust estate is determined to be unascertainable pursuant to 26 U.S.C. § 2055 and the applicable Treasury regulations, 26 C.F.R. § 20.2055–2. It follows that a charitable deduction is not allowable in this instance. This Court, therefore, finds for the defendant.

The foregoing constitute the Court's Findings of Fact and Conclusions of Law. Counsel will prepare and submit an appropriate judgment within twenty (20) days incorporating these Findings of Fact and Conclusions of Law, making provision for any stipulated credit for Canadian death taxes and administrative expenses deductible to the estate, and properly assessing interest and costs.