ESTATE OF MOSE SUMNER, DECEASED, CITIZENS NATIONAL BANK AND TRUST COMPANY OF BAYTOWN, INDEPENDENT EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5439-70. Filed March 19, 1973.

*George A. Hrdlicka*, for the petitioner.
*Daniel A. Taylor, Jr.*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency of $119,-564.28 in the Federal estate tax of the Estate of Mose Sumner. Some of the issues have been settled, and the issues remaining for decision are: (1) Whether the fact that the trustee under a testamentary trust had certain discretionary powers with respect to the investment of property, the payment of enumerated obligations, and the allocation of receipts between income and principal caused the value of the charitable remainder to be unascertainable for estate tax purposes, and (2) whether the value of the charitable remainder should be calculated without reduction for the value of the property interests which passed to the decedent's wife as a result of her election to take under the will and to surrender her interest in community property.

### FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

The petitioner, Citizens National Bank & Trust Co. of Baytown, is the independent executor of the Estate of Mose Sumner (the decedent). It maintained its principal place of business in Baytown, Tex., at the time the petition was filed in this case. The estate tax return for the Estate of Mose Sumner was filed with the district director of internal revenue, Austin, Tex.

When the decedent died on May 20, 1966, he was a director and inactive vice president of the petitioner, and he owned separate and community property, consisting principally of cash, real estate, stock, bonds, and notes receivable. He was 77 years old, and since his brother's death in the late 1940's or early 1950's, he had been very active and interested in the problems of his religion, Judaism. He was survived by his 73-year old wife whom he had married 10 years earlier. At the time of Mr. Sumner's death, her separate estate yielded an annual income of $18,000 to $19,000.

The decedent's will provided his wife with the election of accepting "the provisions made for her in this Will in lieu of any right of homestead, use of exempt property, one year's support, or interest in and to any community property that may belong to her standing in my name alone" or rejecting such provisions and receiving her one-half interest in the community estate. Mrs. Sumner renounced her approximately $224,000 interest in the community property standing in the decedent's name and elected to take under the will. Under the

terms of articles II and III of the will, Mrs. Sumner received bequests of community property valued at $64,817.50, and under the terms of article IV, bequests valued at $3,795 were made by Mr. Sumner to other legatees. Article V established a perpetual trust with the petitioner as trustee, and the trust corpus included not only the decedent's residuary estate but also community property in which Mrs. Sumner had renounced her interest.

Article V further provided that the annual net income of the trust be used to make specified annual payments, in nominal amounts, to various charitable organizations within the meaning of section 2055 (a) of the Internal Revenue Code of 1954[1] and to make nominal monthly payments to the decedent's cook. The remainder of the annual net income was to be distributed to the decedent's relatives as follows: 10 percent to Mrs. Sumner, 12 percent to each of five sisters, 10 percent to each of two other sisters, and $3\frac{1}{3}$ percent to each of two nephews and one niece. Upon the death of any such relative, his share of net income was to be accumulated by the trustee until $10,000 was accumulated, at which time the trust was to distribute such accumulated income in designated portions to various listed organizations associated with the Jewish faith. Each such organization qualifies as a charitable or educational organization under section 2055(a). If any listed organization ceased to function, its share of the net income was to be paid one-half to Jewish organizations which qualify under section 2055(a) and one-half to similar Protestant organizations. The perpetual income interest of the organizations, which were entitled to receive distributions after the death of a lifetime beneficiary, will be treated as a remainder for the purposes of this opinion. The 10-percent lifetime interest bequeathed to Mrs. Sumner was valued at $11,966.43 on the estate tax return.

One of the 12-percent lifetime beneficiaries predeceased Mr. Sumner, and Mrs. Sumner died in 1969. Pursuant to the terms of the trust, accumulations from the shares of these two beneficiaries have been distributed to the listed charities.

Article VI of the will set forth the trustee's powers, the relevant portions of which were as follows:

(a) The trustee is hereby authorized and empowered to hold and possess and to manage, invest, reinvest * * * in such investments and/or properties that it may deem proper, any rule of law or equity to the contrary notwithstanding, it being my intention to give my said Trustee full freedom in the matter of investments.

The Trustee may retain any and all property, bonds, notes, stocks or other securities which are delivered to it hereby as a part of the Trust Estate without being required or obligated in any way to convert the same into a different type of investment.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

(b) The Trustee is hereby given full power and authority, according to its sound judgment and discretion and without limitation whatsoever upon its power and authority so to do, either by statute or otherwise except as herein 'expressly provided, to grant, sell, convey, lease, * * * mortgage, * * * exchange, contract with respect to, grant options with respect to, pledge and otherwise deal with and enter into transactions pertaining to all and every part and parcel of the Trust Estate, * * * and generally to exercise all rights, privileges and powers inuring to it as stockholder in any corporation the shares of stock of which are held by it hereunder.

(c) The Trustee is authorized to maintain, operate and carry on any farm or other business enterprise which may be or become a part of the Trust Estate, in such manner and through such representative as it shall select or employ, and to pay and discharge any and all obligations incurred in any such operations or business out of the income or principal of the Trust Estate.

  *   *   *   *   *   *   *

(f) Whenever it becomes necessary to determine whether or not funds, including stock dividends, coming into the hands of the Trustee, are capital or income, or whenever it may be necessary to apportion blended funds, the Trustee is authorized to make such determination or apportionment, and such determination and/or apportionment shall be binding on all beneficiaries under this instrument, irrespective of any rules of law for the apportionment of income and capital. The Trustee is further authorized to determine the apportionment of charges between income and capital and such determination shall be binding on the beneficiaries hereunder, notwithstanding any rule of law to the contrary.

  *   *   *   *   *   *   *

(p) The Trustee shall, in addition to the powers and duties hereinabove specifically set forth, have all of the rights, powers, duties and responsibilities set forth in the Texas Trust Act and any and all amendments thereto, and the granting of the express powers hereinabove set forth shall not be construed in any manner to limit the powers, duties and responsibilities of said Trustee under the Texas Trust Act, or any amendments thereto, nor shall the granting to the Trustee of the powers, duties and responsibilities contained in the Texas Trust Act be construed as a limitation of the specific powers and duties hereinabove set forth.

Articles I to V of the will were included at the suggestion of the decedent, and article VI was suggested by his attorney, Mr. Strickland, who was also general counsel for, and a director of, the petitioner. The powers provided in article VI were those which were in general use in the office of Mr. Strickland, and Mr. Strickland believed that such powers did not expand upon the powers granted to trustees under the Texas Trust Act, but simply permitted the trustee to act in cases of doubt without the fear of costly litigation. In administering trusts, the petitioner's trust officer uniformly interpreted such powers in the same manner, and he so interpreted Mr. Sumner's will.

In the estate tax return for the Estate of Mose Sumner, the petitioner claimed a marital deduction of $32,408.75 and a charitable deduction of $347,579.33. Such deductions were disallowed by the respond-

ent; and in its petition, the petitioner has claimed a charitable deduction of $381,699.17, and a deduction for the administration expenses and legal fees incurred in protesting the respondent's determination and prosecuting this case.

OPINION

The issues for decision are: (1) Whether the fact that the trustee under a testamentary trust had certain discretionary powers with respect to the investment of property, the payment of enumerated obligations, and the allocation of receipts between income and principal caused the value of the charitable remainder to be unascertainable for estate tax purposes, and (2) whether the value of the charitable remainder should be calculated without reduction for the value of the property interests that passed to the decedent's surviving spouse as a result of her election to take under the will and to surrender her interest in community property.

Section 2055 allows a deduction from a decedent's gross estate for the value of property transferred for certain charitable uses. Section 20.2055-2 of the Estate Tax Regulations states in part:

(a) * * * If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in § 20.2031-7. * * *

(b) * * * If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power. * * *

*Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955); *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929); compare *Henslee* v. *Union Planters Bank*, 335 U.S. 595 (1949), with *Miami Beach First National Bank* v. *United States*, 443 F. 2d 475 (C.A. 5, 1971), certiorari denied 404 U.S. 984 (1971). A contribution of a future interest may be deductible even though the amount ultimately received by charity cannot be ascertained with certainty; it is sufficient if the value of the future interest can be predicted with reasonable reliability by use of certain assumptions, for example, the assumed life of an intervening life beneficiary. When there is a gift of income to a life beneficiary and a gift of the remainder to charity, any prediction as to the value of the gift to charity must be based on the assumption that the life beneficiary will receive only income and that the corpus will be preserved for charity. The respondent argues that in this case, that

assumption cannot be made because the trustee may use its administrative power to divert corpus to the life beneficiaries.

Whether the trustee has such a power must be determined by interpreting the provisions of the will in the light of the applicable State law, in this case, Texas law. *First National Bank in Palm Beach* v. *United States*, 443 F. 2d 480 (C.A. 5, 1971), certiorari denied 404 U.S. 983 (1971); *Miami Beach First National Bank* v. *United States, supra; Florida Bank at Lakeland* v. *United States*, 443 F. 2d 467 (C.A. 5, 1971); *Peoples Trust Co. of Bergen County* v. *United States*, 444 F. 2d 193 (C.A. 3, 1971); *Atwell* v. *United States*, 339 F. Supp. 425 (S.D. Tex. 1972); *Doss* v. *United States*, 326 F. Supp. 1320 (N.D. Tex. 1971).

Under Texas law, the cardinal rule to be followed in construing a will is to ascertain the intent of the testator. *Guilliams* v. *Koonsman*, 154 Tex. 401, 279 S.W. 2d 579 (1955); *Haupt* v. *Michaelis*, 231 S.W. 706 (Tex. Comm. App. 1921). In the first instance, such intent is to be ascertained from the language of the entire will. *Guilliams* v. *Koonsman, supra; Gilkey* v. *Chambers*, 146 Tex. 355, 207 S.W. 2d 70 (1947). If the testator's intent cannot be so ascertained:

It is competent to admit parol evidence, as it is sometimes though not very accurately expressed, to explain a will, (or other written instrument,) by showing the situation of the testator, in his relation to persons and things around him; or, as it is often expressed, by proof of the surrounding circumstances; in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. His intent must be ascertained from the meaning of the words in the instrument, and from those words alone. But as he may be supposed to have used language, with reference to the situation in which he was placed, to the state of his family, his property, and other circumstances relating to himself individually and to his affairs, the law admits extrinsic evidence of those facts and circumstances, to enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the particular facts of the case * * * [*Hunt* v. *White*, 24 Tex. 643, 651 (1860).]

By their terms, the administrative provisions in article VI of the will appear to give the trustee broad powers. Paragraph (a) gives the trustee "full freedom * * * of investments"; paragraph (b) allows it the "power * * * without limitation" to sell, convey, or lease trust property; paragraph (c) authorizes it to pay obligations out of principal or income; and paragraph (f) permits it "Whenever it becomes necessary to determine whether or not funds, * * * coming into the hands of the Trustee, are capital or income, * * * the Trustee is authorized to make such determination or apportionment, and such determination and/or apportionment shall be binding."

Despite the breadth of the terms used in the will, the powers conferred upon the trustee may not be unlimited under Texas law. In *First*

*Nat. Bank of Beaumont* v. *Howard*, 229 S.W. 2d 781, 784–785 (Tex. 1950), the Texas Supreme Court stated:

Despite * * * [the testator's] language that the discretion of the trustee in determining whether payments shall be made out of the corpus shall be final and conclusive, its discretion is not absolute. It remains both the province and duty of the courts to interfere if the trustee acts "outside the bounds of a reasonable judgment." And to determine whether it has so acted the test is: In making or declining to make payments to * * * [the income benficiaries] out of the corpus of the estate would the trustee be *"acting in that state of mind in which the settlor contemplated that it should act."* Scott on Trusts, Vol. 2, Sec. 187, p. 987, *supra.* * * * [Emphasis in original.]

In *Thorman* v. *Carr*, 408 S.W. 2d 259, 260 (Tex. Civ. App. 1966), the trustee had the power to "allocate receipts and expenses between principal and income accounts," and the Texas Court of Civil Appeals, after examining the intent of the testator, held that such power did not include the power to allocate the proceeds of a sale of stock to income. Texas courts have also limited the trustee's power where by their terms the administrative provisions granted the trustee "absolute discretion," "complete discretion," or "full and complete powers of ownership." *Boyd* v. *Frost Nat. Bank*, 196 S.W. 2d 497, 499 (Tex. 1946); *Rust* v. *Rust*, 211 S.W. 2d 262, 265 (Tex. Civ. App. 1948), affd. 214 S.W. 2d 462 (Tex. 1948); *State* v. *Rubion*, 308 S.W. 2d 4, 7 (Tex. 1957). Similarly, this Court has limited the "conclusive discretion" of the trustee in a case involving Texas law, and a U.S. District Court in Texas has limited the "absolute power" of the trustee. *Estate of James S. Todd, Jr.*, 57 T.C. 288, 290 (1971); *Doss* v. *United States*, 326 F. Supp. at 1321.

An examination of Mr. Sumner's will and the relevant extrinsic evidence provides no grounds for concluding that he intended for the trustee to use its administrative powers to favor the life beneficiaries over the charitable remaindermen. Mrs. Sumner, the natural object of his bounty, was given only a 10-percent interest in the net income of the trust after certain minimal annual distributions to charity. She did not need the income from the trust because she had substantial income of her own, and in order to receive the limited benefits provided for her under the will, she relinquished her interest in community property which had a much greater value and allowed it to become a part of the trust. Her interest in the trust was valued at approximately $12,000; the community property which she received under the will had an approximate value of $65,000; and the interest in community property that she surrendered was valued at approximately $224,000. She was given no express power to invade the corpus of the trust, and considering all the circumstances, it appears that she had no reason to need any of such corpus. Moreover, the other life beneficiaries of the trust were collateral relatives of Mr. Sumner. No provision was made

for an invasion of the corpus of the trust for the benefit of any of such collateral relatives, and there is no reason to believe that the testator intended for any of them to have any share of the corpus. Each was given merely a right to receive a stated percentage of the net income of the trust during his lifetime, and on his death, his share of the income passed to charity.

In addition the testator chose a bank to act as trustee, and it was given no express power to invade the corpus for any of the life beneficiaries. The administrative provisions were not suggested by the testator, but were suggested by the draftsman, and his purpose was not to expand the powers of the trustee but merely to avoid controversy and costly litigation in the administration of the trust. Even before any question arose over the scope of the administrative powers, the trustee understood that the powers were to be so limited and interpreted and applied them in that manner. See generally *Baldwin* v. *Baldwin*, 134 Tex. 428, 135 S.W. 2d 92 (Tex. Comm. App. 1940); *Buckley* v. *Herder*, 133 S.W. 703, 706 (Tex. Civ. App. 1910); see also *Pinkston* v. *Pinkston*, 254 S.W. 2d 196 (Tex. Civ. App. 1952).

The evidence also indicates that the testator desired to confer extensive benefits upon charity. During the latter part of his life, he was deeply concerned with the Jewish religion and was active in its problems. The plan of his will was to provide his wife and his collateral relatives with the net income of the trust during their lives, but following the death of any of such beneficiaries, that person's share of the net income was given over to charity. There is nothing in the will to indicate that the testator had in mind that any of the corpus could be used for any of the life beneficiaries.

Considering all the circumstances, we are convinced that a Texas court would find that the trustee's powers in this case were not absolute. See *First Nat. Bank of Beaumont* v. *Howard, supra.* It appears that the testator had a genuine interest in providing limited benefits for the life beneficiaries and providing substantial benefits for charity. Under such circumstances, the trustee may not use its administrative powers to favor the life beneficiaries over the remaindermen; it must use such powers in a bona fide manner to carry out the objectives of the testator and to treat both the life beneficiaries and the remaindermen evenhandedly. When there is doubt as to how it should act, the trustee is given the power to make a decision, but in so doing, it has a fiduciary responsibility to both the life beneficiaries and the charitable remaindermen. In view of that limitation on the trustee's exercise of the administrative powers, we hold that such powers do not prevent a valuation of the charitable remainder by use of the usual assumptions. See *Doss* v. *United States*, 326 F. Supp. 1320 (N.D. Tex. 1971); cf. *Estate of Phyllis W. McGillicuddy*, 54 T.C. 315 (1970).

The respondent contends that the present case is similar to *Atwell* v. *United States*, 339 F. Supp. 425 (S.D. Tex. 1972), in which the court found that the value of a charitable remainder was unascertainable. However, in *Atwell*, the sole lifetime beneficiary, the testator's wife, was also a cotrustee with a friend of the testator, and there was no evidence to indicate that the wife had independent income or that the testator had previous dealings with charitable organizations. The court, therefore, concluded (339 F. Supp. at 432) that:

It is apparent that the testator's intent as reflected by the trust instrument was to hedge his charitable contributions by placing complete reliance upon the trustees to control the assets of the trust.

No such finding can be made in this case. Similarly, the Fifth Circuit cases referred to by the respondent are distinguishable. *First National Bank in Palm Beach* v. *United States*, 443 F. 2d 480 (C.A. 5, 1971); *Miami Beach First National Bank* v. *United States*, 443 F. 2d 475 (C.A. 5, 1971); *Florida Bank at Lakeland* v. *United States*, 443 F. 2d 467 (C.A. 5, 1971). In those cases, either the terms of the will or the surrounding circumstances indicated that the trustee had the freedom to divert corpus for the benefit of life beneficiaries.

The second issue to be decided is whether the value of the charitable remainder should be calculated without reduction for the value of the property interests that passed to Mrs. Sumner. The petitioner contends that because the value of the property interest surrendered by Mrs. Sumner exceeded the value of the property bequeathed to her, she received none of Mr. Sumner's property under the will; she merely retained a portion of her own property equal to the value of the bequests that she received, and made a gift of the balance of her property to the trust.

In support of its position, the petitioner relies primarily on *United States* v. *Stapf*, 375 U.S. 118 (1963), in which the testator's will provided his wife with the election to take under his will and to surrender her right to a one-half interest in their community property. The wife elected to take under the will, and in so doing, received property which had a value of approximately $5,000 less than the value of the property interest which she surrendered. Under these circumstances, the Supreme Court held that the testator had not made a bequest of any of his property to his wife which qualified for the marital deduction. In so holding, the Court stated (375 U.S. at 125) that:

In the present case the effect of the devise was not to distribute wealth to the surviving spouse, but instead to transmit, through the widow, a gift to the * * * [residuary legatees of the husband's estate].

Applying the *Stapf* rationale to this case, we find that Mrs. Sumner should be considered as having received nothing under her husband's will. Accordingly, all of Mr. Sumner's separate property and his share

of the community property was transferred to the trust, except for the outright bequests made to legatees other than Mrs. Sumner and amounts such as those used to pay debts and administration expenses. Therefore, in calculating the amount of Mr. Sumner's estate which passed to the residuary trust, no amount should be deducted by reason of the outright bequests to Mrs. Sumner. Similarly, in calculating the amount of Mr. Sumner's property which passed to the charitable remainder, the value of Mrs. Sumner's 10-percent lifetime interest should not be deducted. In essence, Mrs. Sumner retained property equal in value to that which was bequeathed to her and transferred the remainder of her approximately $224,000 interest in certain community property to the other beneficiaries of the residuary trust. See *Mildred Irene Siegel*, 26 T.C. 743 (1956), affd. 250 F. 2d 339 (C.A. 9, 1957); *Chase National Bank*, 25 T.C. 617, 626 (1955).

*Decision will be entered under Rule 50.*

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.