The **FLORIDA BANK AT LAKELAND** and **J. B. O'Neill**, Co-Executors of Estate of Hugh H. Nelson, Deceased, Plaintiffs-Appellants, and Cross Appellees,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 30183.

United States Court of Appeals, Fifth Circuit.

April 26, 1971.

W. A. Gartner, Jacksonville, Fla., Culverhouse, Tomlinson, Taylor & DeCarion, Jacksonville, Fla., for appellants.

Meyer Rothwacks, Paul M. Ginsburg, Attys., Johnnie M. Walters, Asst. Atty. Gen., Rodger M. Moore, Lee A. Jackson, Attys., Tax Div., Dept. of Justice, Washington, D. C., Oscar Blasingame, Asst. U. S. Atty., Tampa, Fla., John L. Briggs, U. S. Atty., Jacksonville, Fla., Michael L. Paup, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge.

The executors of the estate of Hugh H. Nelson here appeal from a decision by the trial court, sitting without a jury, largely on stipulated facts, that they were

not entitled to a charitable deduction with respect to estate taxes because the value of the charitable remainder was not ascertainable; the United States appeals from a decision of the trial court with respect to the amount of the marital deduction allowed to the estate.

We first consider the appeal by the executors.

Section 2055 of the Internal Revenue Code of 1954 authorizes a deduction from the gross estate of a decedent of the amount of "all bequests, legacies, devises, or transfers * * *

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable * * * purposes."

The will of Hugh H. Helson left the entire remainder of his estate, after certain life interests to his wife and others, to concededly recognized charitable purposes.[1]

Treasury regulations have long allowed a deduction from a decedent's gross estate of the value of a charitable *remainder* interest if such interest is "presently ascertainable" at the time of the decedent's death, and the possibility that the charity will not actually receive the interest is "so remote as to be negligible".[2]

---

1. The pertinent provisions of the will are here set forth.

### IV

"I give, devise and bequeath all the rest, residue and remainder of the property which I may own at the time of my death, both real and personal, and of every kind and description, wherever the same may be situated, to The Florida National Bank at Lakeland, a Florida banking corporation, to have and to hold the same in trust as Trustee, for the following uses and purposes:

(a) Pay over to my dear wife, Charlotte A. Nelson, the sum of One Hundred Seventy-Five Dollars ($175.00) per month *from the income of my said trust estate.* It is my further direction that my Trustee shall pay all medical expenses incurred by my wife, to be paid at the request of my said wife during her natural life.

(b) I direct my Trustee *from the income and capital gains of my trust estate,* to award annually one Five Hundred Dollar ($500.00) Scholarship to the most talented music and voice major student graduating from any High School within a seventy-five mile radius of the City of Lakeland, Florida. * * *

(c) I direct my Trustee to divide the balance of *the income that may accrue to my estate by reason of the capital gains or otherwise into three (3) equal portions,* and to pay one portion to each of my three children, Marjorie Nelson Ullman, Lionel W. Nelson, and Evelyn Nelson O'Neill in quarterly installments, so long as each shall live, * * *." (emphasis added to facilitate further references.)

2. Section 20.2055-2 Regs. provides:

(a) *Remainders and similar interest.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest.* The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in Sec. 20.2031–7. Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible. To determine the present value of such remainder use the appropriate factor from column 4 of Table I or Table II of Sec. 20.2031–7, whichever is applicable. * * *

(b) *Transfers subject to a condition or a power.* If, as of the date of decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, *no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. *If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, de-*

It is a simple matter, of course, for executors of an estate and the Internal Revenue Service to agree on the amount of a charitable deduction if it is made as a direct bequest or legacy without any intervening life estate or other term of years prior to enjoyment, although it involves the uncertainties that always attach to actuarial computations and other matters involving life expectancies. It is, of course, possible to compute the present value of a remainder interest, so long as nothing more is involved than the element of time. Such problem is magnified until it finally becomes impossible of solution as the number of items is increased which may make impossible the final enjoyment by the charitable remainder of the bequest, or which may make impossible a present valuation. These difficulties were fully recognized, and a formulation of rules was devised by the Internal Revenue Service to cope with the problem in Regulations 20.2055–2, *supra*. Thus it is that the remainder here given to charity may be taken only "insofar as that interest is presently ascertainable" and "no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible."

It is clear that these regulations were drawn with the purpose of making certain that whatever amount is taken as a deduction from the gross estate *will* subject only to "the general uncertainty that attends human affairs", Ithaca Trust Company v. United States, 279 U.S. 151, at 154, 49 S.Ct. 291, 73 L.Ed. 647, eventually pass to charity. The Supreme Court has adopted this principle in a trilogy of cases: Ithaca Trust Company v. United States, *supra*, Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 and Henslee v. Union Planters National Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259, rehearing denied 336 U.S. 915, 69 S.Ct. 601, 93 L.Ed. 1078. In the much cited case of Ithaca Trust Company the will provided that the income was to be paid over to the widow for life with remainder to the charity. However, the will authorized an invasion of principle in favor of the wife in such amounts " 'that may be necessary to suitably maintain her in as much comfort *as she now enjoys'* ", 279 U.S. 154, 49 S.Ct. 291 (emphasis added). In the circumstances of that case, in which it appeared that the corpus of the estate was more than ample to maintain the widow according to the style of life which she then enjoyed, a standard which the court found could be determined as a matter of fact, the court held the deduction proper.

The next case to come before the court, involving language which to a scrivener might seem similar, but which, when subject to a careful analysis, was, in fact, quite different, was Merchants National Bank of Boston v. Commissioner of Internal Revenue, *supra*. In that case the trustee was empowered to invade corpus "at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the *comfort, support, maintenance, and/or happiness of my said wife,* and \* \* \* my said Trustee shall exercise its discretion with *liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries* under this trust."

It will immediately be noticed that an additional element was added, and one element was excluded, when one contrasts this right of invasion of corpus with that in the *Ithaca* case. In the first place the words "proper for the comfort, support and maintenance \* \* \* of my said wife" were not modified by any provision that the comfort, support and maintenance should be according to the widow's present standard as was the case in *Ithaca Trust*. Moreover, there was added a completely unmeasurable element by the use of the expression "and/or happiness

vised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is

exempt from an exercise of the power. \* \* \* (Emphasis added.)

of my said wife". Dealing with this situation the Supreme Court said:

"Whatever may be said with respect to computing the present value of the bequest of the testator who dilutes his charity only to the extent of first affording specific private legatees the usufruct of his property for a fixed period, a different problem is presented by the testator who, preferring to insure the comfort and happiness of his private legatees, hedges his philanthropy, and permits invasion of the corpus for their benefit. At the very least a possibility that part of the principal will be used is then created, and the present value of the remainder which the charity will receive becomes less readily ascertainable. Not infrequently the standards by which the extent of permissible diversion of corpus is to be measured embrace factors which cannot be accounted for accurately by reliable statistical data and techniques. Since therefore, neither the amount which the private beneficiary will use nor the present value of the gift can be computed, deduction is not permitted. Cf. Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667.

For a deduction under § 303(a) (3) to be allowed, Congress and the Treasury require that a) highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 348, 72 L.Ed. 667. *Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable.* And, in these cases, the taxpayer has the burden of establishing that the amounts which will either

be spent by the private beneficiary or reach the charity are thus accurately calculable. (Emphasis added.)

The third of the cases referred to arose when a decedent had bequeathed his entire estate in trust with an annuity of $750 per month to be paid to his mother out of income, and if need be out of the corpus with the remainder (after certain specific bequests) to certain named charities. The power of invasion included in that will was an instruction to the trustees—

"to use and expend in their discretion any portion of my estate, either income *or principal,* for the *pleasure, comfort and welfare* of my mother.

The first object to be accomplished in the administration and management of my estate and this trust is to take care of and provide for my mother in such manner as she may desire and my executors and trustees are fully authorized and likewise directed to manage my estate primarily for this purpose."

Although at the time of decedent's death, the estate was earning a net income substantially more than the amount directed to be paid to his mother, and notwithstanding, she was at that time 85 years old and was living on substantially less than $750 per month, and owned independent investments netting her a substantial amount per month, the court held that the power given the trustees to invade corpus for the mother's "pleasure, comfort and welfare" was too indefinite to qualify as an "ascertainable standard". The court also noted the decedent's wish as expressed in his will that his mother be provided for "in such manner as she may desire." The court stated:

"In view of the express priority accorded the mother's wishes, respondents' fiduciary duty to the ultimate beneficiaries, private and charitable, was ineffective to guarantee preservation of any predictable fraction of the corpus for disposition after the moth-

er's death." (335 U.S. 598–599, fn. 3, 69 S.Ct. 292)

The court noted that its prior decision in *Ithaca Trust* should be limited to a situation where the invasionary power was measurable by a "ready standard," such as was before the court in the *Ithaca Trust* case. The court said:

"We agree with the District Court that this case is governed by the decision in the *Merchants Nat. Bank of Boston* case and that the suit should be dismissed. It is apparent on the face of the complaint that this testator's will did not limit the trustees' disbursements to conformity with some ready standard—as where, for example, trustees are to provide the prime beneficiary with such sums as 'may be necessary to suitably maintain her in as much comfort as she now enjoys.' Ithaca Trust v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647. * * * As in the Merchants Nat. Bank of Boston case * * * where the trustees had discretion to disburse sums for * * * the prime beneficiary, so here we think it the 'salient fact * * * that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction.' 320 U.S. 256, 258, 262, 64 S.Ct. 108, 112, 88 L.Ed. 35."

The court also stated general principles to be applicable in such a case as this when, 335 U.S. at page 599, 69 S.Ct. at page 292, it said,

"We do not overlook the unlikelihood that a woman of the mother's age and circumstances would abandon her customary frugality and squander her son's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance. The contingency which would have diminished or destroyed the char-

itable interest here considered might well have been insured against, but such an arithmetic generalization of experience would not have made this charitable interest 'presently ascertainable.' 'Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient.' Merchants National Bank of Boston v. Commissioner of Internal Revenue, *supra*, 320 U.S. at page 261, 64 S.Ct. at page 111, 88 L.Ed. 35."

In the later case of Commissioner of Internal Revenue v. Sternberger, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246, the Supreme Court expressly approved Internal Revenue regulations having substantially the same effect as those now extant. In doing so, the court stated, "Section 81.46 now provides expressly that no deduction is allowable for a conditional bequest to charity 'unless the possibility that charity will not take is so remote as to be negligible.'" We also conclude that the regulations here in effect are appropriate as implementing the provisions of § 2055 of the Internal Revenue Code.

We now come to the specific powers of invasion of corpus which causes the government to contend that the standard of certainty required by the statute and regulations has not been met. Before construing the will as written, we note that appellant complains of the refusal of the trial court to considered evidence tendered on behalf of the appellant, purporting to show first, that the corporate fiduciary in administering the trust "netted" capital gains and losses so that no invasion of the corpus could exceed the excess of distributed capital gains over capital losses during the final accounting period before distribution of the remainder and, second, to show that the intent of the decedent was to provide for the distribution of only "net" capital gains, where the term "capital gains" was used in the will. Appellant's argument as to the propriety of this evidence in the case is based upon its contention that the will, as drawn, is ambiguous, primarily be-

cause under subparagraphs (a), (b), (c), supra, the will contained language varying from "income of my said trust estate" in (a) to "the income and capital gains of my trust estate" in (b) and finally "the income that may accrue to my estate by reason of the capital gains or otherwise" in subparagraph (c).

We agree with the trial court that this will is not ambiguous and conclude that, in fact, a construction of it within the four corners is the rule in Florida, unless there is a "discernible ambiguity or uncertainty arising from the language used and obscuring the intent of the testator". (see Filkins v. Gurney, Executor, 108 So.2d 57, Fla.App., 1959. So far as relates to those subsections which "direct" the trustee to look to "capital gains" for the purpose of making payments to life beneficiaries, the language is precise and accurate in stating that the trustee is to consider both "income" as distinguished from capital gains in subsection (b) as well as "capital gains" if necessary for the annual award of the $500.00 scholarship after the payment to decedent's wife, and it is equally clear that the language in subparagraph (c) directs the trustee to pay to each of the three life tenants the balance of the total "income" which, in all respects other than in a contest between life tenants and remaindermen is a generic term that may include capital gains.[3] Here it is made plain that when he uses the term "income" that accrues to his estate he wishes the entire income to be distributed to the children, whether arising from earnings or from the disposition of property at an appreciated value, producing capital gains.

We think it is not necessary to construe the will in such a manner as to hold that the use of the word "income" in subparagraph (a) is to be equated with the words "income and capital gains" and the words "income that may have accrued in my estate by reason of the capital gains or otherwise" in subparagraphs (b) and (c). The resolution of the question here before the court does not de-

pend upon the ascertainment of the fact that capital gains are subject to use under subparagraph (a), since it is perfectly plain that capital gains are subject to distribution under the remaining two paragraphs. In point of fact, based on the facts of record here, it is clear that the only point at which such invasion would likely be required would be to satisfy the provision of subparagraph (c). We have no doubt that the three children of the decedent have a valid legal claim against the executor of this estate and the trustee thereafter for a distribution to them during their life of precisely what the paragraph authorized, that is to say, a quarterly payment to them of all income, including income to the estate resulting from the sale of appreciated assets.

There being no suggestion in the will that a surcharge be made against the life beneficiaries for a repayment in any subsequent accounting period if any capital losses occurred by reason of a sale of property at less than cost by the fiduciary, we construe the language in these two sections in the usual manner, which would not permit a holding that all gains received by the life beneficiaries as quarterly disbursements from the trust are subject to a charge back to the extent of any subsequent losses.

Thus it is that we come to the precise question whether the requirement that the trustee pay over all capital gains to the life beneficiaries prevents the value of the charitable remainder from being ascertainable, and, thus, not allowable under § 2055 of the Internal Revenue Code.

It takes no skill or expertise in investment matters to know that during the very time within which this case has been in litigation a wise and prudent investor, like the appellant here, might seek an opportunity to sell a list of securities at the peak of the market and, we suppose, it can be noted as a matter of common knowledge, a very rapid decline in values

---

3. Of course, capital gains are taxed as income, although at special rates and un-

der special circumstances, for federal income tax purposes.

has also occurred during this period of time. If the sale was actually made at the peak of the market and if this represented a sale of assets that had appreciated since they had come into the hands of the fiduciary, and if the securities in which the trustee then reinvested were later disposed of as the market began to slide, or unfortunately, even at the bottom of the slide, it is patent that the corpus might have been seriously invaded.

■ Of course, whether or not the trustee actually did enjoy capital gains, is not of significance as we construe the will and apply the law to what it provides. The life tenants have, presumably, a fairly long expectancy since they include the direct decedents of each of the three children. Regardless of what may have been *done* up to the moment, not only is there the *power* of the trustee to invade the corpus by distributing net gains to the life beneficiaries in accordance with the terms of the will, they are *required* to do so by its precise language. We conclude, therefore, that the trial court correctly held that "there is simply no way to determine that the charitable beneficiaries will receive the $60,723.90 at the expiration of the three life estates."

The issue relating to the deduction from gross estate for marital deduction arises in the following manner. The executors elected to value the estate for estate tax purposes as of the alternate valuation date, one year after death, the valuation at that time was $300,928.75. Decedent's estate was valued as of the date of his death as $300,280.26.

■ Decedent's widow dissented from the will and, as authorized under Florida law, elected to take her dower rights. The dower rights amounted to ⅓ of all personal property, since there was no real estate in the decedent's estate. Although both parties agreed that the dower rights, once elected, relate back to the date of death, and the widow's rights were ⅓ the property which had passed by decedent's demise, the actual order

setting aside specific property to the widow in satisfaction of her dower was entered some 10 months after death. Specific items, in the nature of securities, were transferred to her which on the alternate valuation date had a value of $109,605.08. Although this amount is, of course, substantially more than ⅓ of the value of the gross estate, on that same date, executors claimed the right to deduct as a marital deduction the sum representing the value of the specific assets were set aside to the widow rather than an amount equalling ⅓ of the value of all property at the date of death.

The question we have here to decide is whether, because the executors are entitled to value the entire estate for estate tax purposes at the alternate date, they are permitted to deduct a figure for dower representing the value on the same date of the specific assets given to the wife as her dower, notwithstanding the value assigned to them for marital deduction purposes is substantially larger than the value of ⅓ of the estate at both the alternate valuation date and at the time of death. The trial court concluded that the executors correctly claimed the value of the specific assets, rather than being restricted to a value not exceeding ⅓ of the value of the assets on the date of death.

We conclude that this determination by the trial court was in error. The Florida case of Murphy v. Murphy, 170 So. 856, 125 Fla. 855, cited by the taxpayer here, was dealing with the dissent of a widow from a will executed by her husband and a claim for dower by her, and the precise question was presented to the court as to what portion of the estate the widow was entitled to, upon distribution, pursuant to the filing of her election to take dower. The election in that case was made a considerable period of time after the date of death. The court stated: "In response to Question 2, the court does hereby declare and decree that, as there were no children and no lineal descendants of the deceased, and as the evidence shows that his estate consisted entirely of personal property,

the widow upon her election to take dower is entitled to one-half of the gross estate as it existed at the date of the death of the deceased, together with mesne profits on her dower profits on her portion of the estate up to the date of the assignment and delivery of her dower to her." It is noted that her dower, under the circumstances, amounted to ½ in the *Murphy* case rather than the ⅓ to which she is entitled, in view of the fact that the decedent left surviving children.

No case has been cited to us expressly resolving the issue before us. However, the fact that the estate is given an alternative to choose a year after death for the purpose of reporting the value for estate tax purposes, thus protecting an estate against extreme fluctuations in value between the date of death and the normal period for administration of an estate does not, it seems to us, warrant the assumption that specific items of property belonging to the estate, can be set aside to the widow, presumably having had a value not to exceed ⅓ of the value of the entire estate at the time of death, but which had appreciated in value at the date of the entering of the order allocating them in satisfaction of dower, and then utilizing that value or a value which these particular assets had on the alternate valuation date to enlarge the marital deduction, so that it is entirely out of proportion to the total estate.

The method by which this estate was handled illustrates the vice that would result were the court to hold in favor of the larger marital deduction. Undoubtedly acting in the best of faith, the executors could, as they did here, elect an alternate date for the valuation of the

gross estate, even though the value at that time was a few hundred dollars more than at the date of death. The executors could, during the intervening months following death, and before the filing of the return, analyze the particular assets of the estate and present to the probate court for distribution to the widow as her dower, assets which had appreciated in value from the date of death until the date of actual date of distribution, leaving the unappreciated assets or those in which losses had occurred.[4] Thus, the executors could very properly favor the wife by referring back to the date of death and picking those securities which had shown gains thereafter and use these to satisfy her claim for ⅓ of the estate. Since her ⅓ interest is, under the Florida law, referable to that date, Murphy v. Murphy, *supra*, this, therefore, should fix the value for marital deduction purposes as of the same date. This is not only consistent, but it seems in line with the reasoning in the only case cited to us which seems to establish a principle bearing on this situation. (See Estate of Hanch v. Commissioner of Internal Revenue, 19 T.C. 65 [1952]).

We conclude that the trial court erred in permitting the valuation of the widow's dower as of the alternate date. It should have been restricted to the amount of ⅓ of the gross estate at the date of death.

The judgment insofar as it denied the charitable deduction is affirmed and insofar as it granted the judgment in favor of the taxpayer with respect to the marital deduction item is reversed. The case is remanded to the court for further proceedings not inconsistent with this opinion.

---

4. Since the value on the date of valuation was only a few hundred dollars more than on the date of death for the total assets, whereas the particular assets assigned to the wife showed an appreciation of some $7,000, it seems to follow as a matter of course that there must have been a loss in other items in the estate.