ESTATE of Harry A. HAVERLAH, Deceased, Harry L. Brown, Executor,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 71-3006.

United States Court of Appeals,
Fifth Circuit.

July 27, 1972.

Scott P. Crampton, Asst. Atty. Gen., Jane Edmisten, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Ben A. Douglas, Atty., Tax Div., Dept. of Justice, Dallas, Tex., Roby Hadden, U. S. Atty., Tyler, Tex., Meyer Rothwacks, Paul M. Ginsburg, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Allen E. Pye, J. Robert Dobbs, Jr., Tyler, Tex., for plaintiff-appellee.

Before GOLDBERG, DYER, and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiff, Harry L. Brown, is the acting executor and trustee of the estate of Harry A. Haverlah, who died in December of 1964 while domiciled in Palestine, Texas. Plaintiff instituted this refund suit in federal district court, claiming that the estate was entitled to a charitable deduction because the value of a charitable remainder was presently ascertainable at the date of the decedent's death. The district court, 327 F.Supp. 243, determined that the testamentary trust created by Haverlah with a papered charitable remainder was not fenced out of an estate tax deduction by the statute and concomitant regulations. The government appeals that ruling, and we reverse. Under our analysis of the statutory scheme, as viewed and measured by the decided cases, one of the plenary powers granted to the plaintiff as executor and trustee is simply too gargantuan to crawl through the statutory and judicial holes carved out of the regulatory fences.

The facts as found by the district court reveal that in his last will and testament the decedent created a trust, the income and corpus of which are to be used for the establishment and maintenance of the Harry A. Haverlah Foundation, the principal purpose of which is to be the making of educational loans to deserving high school graduates. While the decedent's primary desire was to use his estate for educational purposes, he also felt the need to provide for noncharitable beneficiaries.

During his lifetime the decedent was instrumental in the organization and growth of H. L. Brown & Associates, Inc., a factoring business located in Palestine, Texas. At the time of his death the decedent owned 49% of the stock of the corporation, with the remainder being owned by plaintiff and his wife. The decedent had great confidence in the plaintiff, as evidenced by the fiduciary positions granted him under the provisions of the decedent's will. The decedent also entertained great confidence in the future of H. L. Brown & Associates, both as to its profitability and as to the likely increase in value of his 49% interest. In order that the Brown enterprise be encouraged to succeed and expand to the end that the decedent's trust and the purpose for which it was created would ultimately benefit, the decedent in his will made the entirety of his estate available to the corporation. Under the terms of the trust instrument, the trustee was authorized to make available to H. L. Brown & Associates, or any successor corporation, all or any part of the decedent's estate to be used as collateral for securing loans to the corporation. The trustee was also directed to make unsecured and unlimited loans to the company from any sums of cash in the hands of the trustee. At the time of his death decedent owned a considerable number of shares in the Franklin Life Insurance Company, and this stock stood as collateral for corporate loans totaling $450,000. However, the district court found that there existed no real possibility that the decedent's Franklin Life stock would be needed to satisfy the corporate obligation which it secured.

In addition to making all of the trust assets available to the plaintiff's factoring business, the trust instrument expressly directed the trustee to pay out of trust income or corpus all costs, expenses, and charges incurred by one Shirley Johnson for any unusual medical services. In addition, the trustee was directed to pay from the trust assets Shirley Johnson's reasonable costs and expenses of any unusual emergency of

a character other than that related to health and medical care. Consistent with his desire that his estate be used for educational purposes, the decedent also empowered the trustee to pay for the benefit of Shirley Johnson's two sons and for the plaintiff's son all reasonably necessary expenses for a course of higher learning in a college or university in the State of Texas.

The district court concluded that the taxpayer was entitled to an estate tax deduction in the requested amount, holding that the trustee's invasionary powers, either singly or in combination, did not operate to destroy the measurability of the charitable remainder. On appeal the government contends that the decedent's charitable bequest to the Foundation is subject to such diminution through the exercise of rights and powers vested in the trustee that the bequest is not deductible from the decedent's gross estate as a transfer for a charitable purpose. It is the government's position that each of the several invasionary powers granted to the trustee standing alone makes the value of the charitable remainder interest not presently ascertainable at the date of the de-

cedent's death. We agree that the trustee's unlimited power to subject the trust assets to the vicissitudes of the H. L. Brown enterprise renders the charitable bequest to the Harry A. Haverlah Foundation non-deductible. Accordingly, we intimate no opinion as to the effect of the other invasionary powers upon the deductibility of the charitable remainder.

Section 2055 of the Internal Revenue Code of 1954 allows a deduction from the gross estate of a decedent for "all bequests, legacies, devises, or transfers

. . .

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes." 26 U.S. C.A. § 2055(a).

The Treasury Regulations which implement this statutory provision permit deduction from a decedent's gross estate of the value of a charitable remainder interest if, at the time of the decedent's death, that interest is "presently ascertainable" and the "possibility that the charitable transfer will not become effective is so remote as to be negligible."[1] This court recently upheld the

---

1. Section 20.2055–2 Regs. provides:

(a) *Remainders and similar interest. If a trust is created or property is transferred for both a charitable and a private purpose deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest.* The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in Sec. 20.2031–7. Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible. To determine the present value of such remainder use the appropriate factor from column 4 of Table I or Table II of Sec. 20.2031–7, whichever is applicable. * * *

(b) *Transfers subject to a condition or a power.* If, as of the date of decedent's death, a transfer for charitable purposes is dependent upon the per-

formance of some act or the happening of a precedent event in order that it might become effective, *no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. *If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power.*

* * * * *

26 C.F.R. § 20.2055–2 [emphasis added].

validity of these regulations in Florida Bank at Lakeland v. United States, 5 Cir. 1971, 443 F.2d 467. In explaining the necessity for such regulations we remarked:

"It is a simple matter, of course, for executors of an estate and the Internal Revenue Service to agree on the amount of a charitable deduction if it is made as a direct bequest or legacy without any intervening life estate or other term of years prior to enjoyment, although it involves the uncertainties that always attach to actuarial computations and other matters involving life expectancies. It is, of course, possible to compute the present value of a remainder interest, so long as nothing more is involved than the element of time. Such problem is magnified until it finally becomes impossible of solution as the number of items is increased which may make impossible the final enjoyment by the charitable remainder of the bequest, or which may make impossible a present valuation. These difficulties were fully recognized, and a formulation of rules was devised by the Internal Revenue Service to cope with the problem in Regulations 20.2055–2, *supra.* Thus it is that the remainder here given to charity may be taken only 'insofar as that interest is presently ascertainable' and 'no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.' "

*Id.* at 469. In the instant case the district court determined that at the date of Haverlah's death the possibility that the charitable transfer would not become effective "was so remote as to be negligible or highly improbable as is required by the Treasury Regulations and case law." In addition, the trial court held that the interest which the Haverlah Foundation was to receive from the trust was presently ascertainable at the date of the decedent's death. We do not disagree with the remoteness of the possible inefficacy of the charitable transfer.

However, our analysis of relevant Supreme Court rulings convinces us that at the time of the decedent's death the value of his bequest to the Haverlah Foundation was not presently ascertainable within the intent of the Code and the attendant regulations.

In a series of cases extending over a period of several decades, the Supreme Court developed a broad-gauged principle to determine whether or not the value of a charitable remainder is "presently ascertainable." The Court first had occasion to confront the problem in Ithaca Trust Co. v. United States, 1928, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647, 649, where a decedent left the residue of his estate in trust for the benefit of admitted charities, but granted the trustee the authority to use any sum of money from the trust corpus "that may be necessary to suitably maintain [the decedent's wife] in as much comfort as she now enjoys." The Court held that this invasionary power did not render the gifts to charity so uncertain that a charitable deduction should be disallowed. The Court, speaking through Mr. Justice Holmes, supported its ruling in the following words:

"The [trust] principle that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

279 U.S. at 154, 49 S.Ct. at 291. It is the taxpayer's position that this standard should be directly applied in the instant case. In applying this standard, the plaintiff asserts that the probable depletion of the trust resulting from his authority to subject the corpus to the fortunes of the factoring business in-

volved "no uncertainty appreciably greater than the general uncertainty that attends human affairs." Of course, we are not in a position to disagree with the plaintiff's assessment as to the relative certainty of the financial success of H. L. Brown & Associates, Inc. However, we believe that the plaintiff is incorrect in claiming that the Supreme Court in *Ithaca Trust* held that the measure of the value of a charitable remainder need not be any more reliable than the "general uncertainty that attends human affairs," in order to qualify for a deduction under Section 2055.

In Merchants National Bank v. Commissioner of Internal Revenue, 1943, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, the Supreme Court once again undertook to elucidate the meaning of "presently ascertainable." There, a decedent placed his entire estate in trust to certain named charities, with authorization to the trustee to invade the corpus at such time as "my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife," 320 U.S. at 257–258, 64 S.Ct. at 110. Furthermore the settlor specifically directed the trustee to exercise its discretion with respect to its invasionary powers with liberality to the decedent's wife. In denying the taxpayer a deduction for the charitable remainder, the Court noted that "[o]nly where the conditions on which the extent of invasion * * * are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable." 320 U.S. at 261, 64 S.Ct. at 111. Even though the decedent's widow was sixty-seven years of age, lived a frugal life with substantial independent means, and had no dependent children, the Court held that the conditions of invasion were not so fixed because the trustee could disburse those sums which the widow's happiness might require to be expended.

The last link in the concatenation of Supreme Court cases contouring the "presently ascertainable" standard is Henslee v. Union Planters National Bank & Trust Co., 1949, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259. In *Henslee* the testator authorized the trustees to "expend in their discretion any portion of my estate, either income or principal, for the pleasure, comfort and welfare of my mother." 335 U.S. at 596, 69 S.Ct. at 291. The balance of the trust was to be paid over to four named charities, and the executors and trustees sought an estate tax deduction for the value of the charitable remainder. At the time of his death the decedent's mother was eighty-five years old, lived on substantially less than the monthly net income produced by the estate, and possessed independent investments which generated income of $300 per month. Furthermore, a postmortem revealed that the decedent's mother died within three years of the decedent's death without ever having requested the trustees or executors to invade the trust corpus on her behalf. Nevertheless, the Supreme Court denied the requested deduction. Relying upon its decision in Merchants National Bank, the Court stated:

"We agree with the District Court that this case is governed by the decision in the Merchants Nat. Bank of Boston case and that the suit should be dismissed. It is apparent on the face of the complaint that this testator's will did not limit the trustees' disbursements to conformity with some ready standard—as where, for example, trustees are to provide the prime beneficiary with such sums as 'may be necessary to suitably maintain her in as much comfort as she now enjoys.' Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 [649.] The stated income here directed to be paid to the mother was 'to be used by her as she sees fit.' Beyond this the trustees were empowered to invade or wholly utilize the corpus of the estate for the

mother's 'pleasure, comfort and welfare,' bearing in mind the testator's injunction that 'The first object to be accomplished . . . is to take care of and provide for my mother in such manner as she may desire . . . .' As in the Merchants Nat. Bank of Boston case, where the trustees had discretion to disburse sums for the 'comfort, support, maintenance, and/or happiness' of the prime beneficiary, so here we think it the 'salient fact . . . that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction.' 320 U.S. 256, 262, 64 S.Ct. 108, 112, 88 L.Ed. 35 [40.]

335 U.S. at 598–599, 69 S.Ct. at 292 [footnotes omitted].

▇ Before applying to the instant action the principles developed in this trilogy of Supreme Court cases, we must first explore the realities of the plaintiff's invasionary power under the dictates of the decedent's will. As noted above, the plaintiff, as trustee, was given express authority both to employ any and all of the trust assets as collateral for loans and to use any and all cash for unsecured loans to the H. L. Brown enterprise, or any successor corporation. The trustee was also granted the general power, consistent with a standard of reasonable care, to invest and re-invest the trust estate in such real and personal property as may appear to the trustee to be in the best interests of the trust. At the time of the decedent's death the plaintiff was president of the Brown corporation and owned a majority of the company's capital stock. Of course, in determining whether or not the charitable remainder in this case is "presently ascertainable," we recognize that our task is limited to an evaluation of the invasionary power of the trustee under the express terms of the grant. Estate of Stewart v. Commissioner of Internal Revenue, 3 Cir. 1971, 436 F.2d 1281; Strite v. McGinnes, E.D.Pa.1963, 215 F. Supp. 513, aff'd 3 Cir., 330 F.2d 234, cert. denied, 1964, 379 U.S. 836, 85 S.Ct.

69, 13 L.Ed.2d 43. However, we think we are obligated to include in our evaluation of this trust instrument the trustee's ownership and control of the H. L. Brown corporation. It is quite obvious from the trust instrument itself that the trustee's control and ownership of H. L. Brown & Associates, Inc., constituted an essential ingredient in the decedent's over-all testamentary plan. This is evidenced by the fact that the decedent defined the term "successor corporation," as any corporation organized for the purpose of conducting a finance business in which the plaintiff owns at least fifty-one per cent of the corporate stock, in which plaintiff is president, and in which the decedent's estate owns stock in an amount equal to or greater than the decedent's percentage of stock ownership in H. L. Brown & Associates, Inc., at the time of his death. Finally, we note that Haverlah stated in his will that the invasionary powers granted to the trustee, including the power to loan money to the Brown corporation, were sufficient to provide adequately for those to whom the decedent felt the strongest and most compelling financial obligations. Indeed, in that portion of his will in which he made the charitable bequest, the decedent directed the trustee to establish the Harry L. Haverlah Foundation by using all of the income of the trust estate and any of the trust corpus which the trustee in his sole discretion deemed unnecessary for the accomplishment of the purposes to be served by the invasionary powers. The decedent quite clearly intended that the plaintiff was to employ his invasionary powers with liberality toward the non-charitable beneficiaries and to the detriment of the charitable foundation.

▇ In light of the decedent's scheme, we hold that the amount of the charitable bequest was not presently ascertainable at the time of his death. We find that the plaintiff's authority to finance a business operation is totally unlike that power delivered to the trustee in *Ithaca Trust* and more closely analogous to the invasionary powers granted

to the fiduciaries in *Merchants National Bank* and *Henslee*. In *Ithaca Trust* the depletion of the trust corpus could not be wrought by the guiding hand of individual volition. If invasion became a necessity, the extent of the depletion could not be dictated by the whim or caprice of either trustee or beneficiary. However, in contrast to this delimitation, the exact opposite prevailed in both *Merchants National Bank* and *Henslee*. In *Merchants National Bank* the testator's bounty had to accommodate the comfort and happiness of his wife, while in *Henslee* depletion of the trust corpus could be effected to serve the pleasure and comfort of the decedent's mother. In our opinion the value of the charitable remainder is unascertainable in the instant case because of the potential legitimized siphoning of the trust assets to the plaintiff's alter ego, H. L. Brown & Associates, Inc. Our determination of unascertainability is not pinioned upon the fact that the trustee possessed the power to subject the corpus of the Haverlah trust to the business risks of a single enterprise. Rather it is that power taken in conjunction with the plaintiff's ultimate control of the enterprise that leads us to conclude that the statutory requirements of ascertainability have not been satisfied. In essence, the decedent has permitted the plaintiff to hypothecate to himself, without the veto or restraint of any mundane power, any or all of the trust's assets. It is our conclusion that such limitless authority to founder the foundation destroys the requisite inviolability of the charitable remainder. Rand v. United States, 2 Cir. 1971, 445 F.2d 1166.

 The plaintiff finds considerable support for his position in the quoted statement of Mr. Justice Holmes in *Ithaca Trust*, claiming that the possibility that the trust corpus might be depleted because of the financial failure of the Brown corporation involves no uncertainty appreciably greater "than the general uncertainty that attends human affairs." As we read the *Ithaca Trust* case, Mr. Justice Holmes' remark was intended as an answer to the contention that the trust corpus in that case might be depleted even though the trustee followed faithfully the prescribed standard. The trustee in *Ithaca Trust* was directed to invade the corpus to maintain the widow in as much comfort as she enjoyed at the time of her husband's death. Assuming, for example, that the income on trust investments decreased substantially, there did exist the possibility that the corpus could be totally depleted by the widow's then-existing comfort. However, recognizing that neither the statute nor the regulations require an absolute and certain valuation of the charitable remainder, the Court noted that in order to qualify a bequest for an estate tax deduction a testator need not insure the charitable remainder against the general uncertainty that attends human affairs. With this interpretation the Court's language in Ithaca Trust does not aid the plaintiff in his quest for an estate tax deduction, for Haverlah's will contains no objective standard interpositioned between the "general uncertainty that attends human affairs" and the plaintiff's invasionary power.

 The plaintiff also seeks to support an estate tax deduction for the charitable remainder on the basis of the district court's findings that (1) there existed no real possibility that the decedent's Franklin Life stock would be needed to satisfy the corporate obligation which it secured, and (2) the possibility that the charitable transfer would not become effective was so remote as to be negligible. While we fully accept, as a factual matter, the unlikelihood of any ultimate diminution of the trust corpus as a consequence of the plaintiff's exercise of his invasionary powers, we nevertheless remain firm in our conclusion that the value of this charitable remainder is not "presently ascertainable." Factors of predictability, no matter how susceptible to proof as certitudes, simply cannot be weighed in our ultimate decision. As the Supreme Court stated in *Henslee*:

"We do not overlook the unlikelihood that a woman of the mother's age and circumstances would abandon her cus-

tomary frugality and squander her son's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance. The contingency which would have diminished or destroyed the charitable interest here considered might well have been insured against, but such an arithmetic generalization of experience would not have made this charitable interest 'presently ascertainable.' 'Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient.' Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra (320 U.S. at 261, 64 S.Ct. 108 at page 111, 88 L.Ed. 39).

Nor do we think it significant that the trust corpus was intact at the mother's death, for the test of present ascertainability of the ultimate charitable interest is applied 'at the death of the testator.' Ibid. The charitable deduction is a matter of congressional grace, and it is for Congress to determine the advisability of permitting amendment of estate tax returns at such time as the probable vesting of the charitable interest has reduced itself to unalterable fact."

335 U.S. at 599–600, 69 S.Ct. at 292, 93 L.Ed. 259 [footnotes omitted]. *See* Estate of Stewart v. Commissioner of Internal Revenue, *supra*. This language requires that we ignore "extrinsic circumstances when the will itself furnishes no definite standard of guidance." Seubert v. Shaughnessy, 2 Cir. 1956, 233 F.2d 134. Since we have held that no amount of charitable construction of the decedent's will would impose objective restraints upon the plaintiff's authority through possible economic excursions to flex and to malleate the quantum of the charitable remainder, we are constrained to disregard the district court's findings on postmortem probabilities.[2]

While recognizing that some testators could escape taxation between the barbs and the wire of the regulatory fences established by legislative edict, we hasten to note that Congress in its wisdom has required at a minimum some certitude in the relaxation of estate taxes for charitable purposes. The trustee in this case was given an itinerary that directed him to be so charitable to the non-charitable beneficiaries that he could legitimately cargo to H. L. Brown & Associates, Inc., all of the assets of the Haverlah trust. We do not think that Congress intended a captain to have this navigational latitude. The statutes and regulations, painted with a judicial gloss, dictate that some testamentary clutching and restraint must engine the trust estate with an assured certainty that the charity will receive the testator's largesse at journey's end. In this case the plaintiff's plenteous power to pirate the cargo on its trust journey rendered unascertainable the value of the charitable remainder for statutory exclusion from estate taxation. Therefore, the judgment of the district court is reversed, and the case is remanded with directions to dismiss the plaintiff's complaint.

Reversed and remanded with directions.

2. While we are not permitted in this case to consider any autopsic circumstances, we point out that the plaintiff, about a year after the decedent's death, sold the estate's major asset (Franklin Life Insurance stock) and simultaneously loaned $450,000 to H. L. Brown & Associates to pay off a loan which the corporation was unable to pay from its own cash reserves. For several months in 1968 the amount loaned to the Brown corporation from the trust assets exceeded $550,000, which is more than sixty per cent of the value of the decedent's gross estate at the date of his death. Also in 1968 the plaintiff sold to himself, at a book value of approximately $26,000, the estate's entire 147 shares of stock in H. L. Brown & Associates, Inc.