ESTATE OF SHIRLEY POLLOCK, DECEASED, NEAL J. POLLOCK, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2430–80.    Filed December 21, 1981.

*Jan D. Atlas*, for the petitioner.
*David M. Kirsch*, for the respondent.

RAUM, *Judge*: The Commissioner determined an estate tax deficiency in the amount of $31,922 in respect of the Estate of Shirley Pollock. After concessions, the only question remaining is whether her estate is entitled to a credit under section 2013, I.R.C. 1954, for the estate tax paid by the Estate of Sol Pollock, her husband, with respect to property in a trust the income of which was distributable after his death to his wife and children "in such proportions as [the trustee] determines without being required to maintain equality among them" in accordance with specified provisions.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Shirley Pollock died on August 4, 1976, at the age of 54, a legal resident of Florida, where her estate was probated. The estate is the petitioner herein, and the personal representative

of the estate is Neal J. Pollock, the decedent's son, a resident of Virginia. The Pollocks had one other child, Stephen J. Pollock.

On September 12, 1968, Sol Pollock, the decedent's husband, established an inter vivos revocable trust. Arthur D. Pollock, whose relationship to the settlor does not appear in the record, was named as trustee. The corpus consisted of insurance policies, and it was apparently intended that the beneficiaries' enjoyment of the trust was not to commence until the settlor's death, when the proceeds of the insurance policies would be collected. On the death of Sol Pollock, with Mrs. Pollock surviving, the trustee was directed to divide the corpus and hold the assets in two separate trusts. Under paragraph "First," a marital deduction trust was to be established for the benefit of the wife. It was to be funded in such manner as to produce the maximum marital deduction when coordinated with other property passing to Mrs. Pollock as a result of her husband's death. She was to be paid the income from this trust periodically during her lifetime as well as so much of the principal as she might from time to time request, and she was given a general power of appointment over the undistributed portion of the principal at her death.

The second trust was to contain all assets remaining in the original trust after funding of the marital deduction trust. Relevant provisions of this "remainder" trust are set forth as follows:

SECOND: After allocating to the Trust under Item First the fraction, if any, of the principal held hereunder which may be required to satisfy the provisions of Item First, Trustee shall hold the balance of such principal in trust, and pay to or apply for the benefit of such of Settlor's wife, SHIRLEY POLLOCK, and Settlor's children as he selects and in such proportions as he determines without being required to maintain equality among them, so much of the income of this Trust as shall be necessary for their proper maintenance, support, health, education, or any other need which Trustee shall deem to be sufficient, until the death of the survivor of Settlor and Settlor's wife, or until there shall be then living no child of Settlor who is under the age of 21 years, whichever shall last occur.

\* \* \* \* \* \* \*

THIRD: Trustee is authorized, in his absolute discretion, to use principal for maintenance and support, for educational requirements, and health, including but not limited to medical and surgical expenses, of any income beneficiary or any issue of Settlor, provided however, that, in determining whether to use principal pursuant hereto, Trustee shall consider the funds available to such beneficiary or issue from other sources.

Payments made hereunder for anyone other than Settlor's wife shall be made only from the principal of the Residuary Trust, established by Item Second, and payments for the benefit of Settlor's wife shall be made only from the Marital Trust under Item First, as long as there are any funds remaining in that trust.

\*      \*      \*      \*      \*      \*      \*

Notwithstanding the foregoing, Trustee is further authorized, in its absolute discretion, to use principal for a child of Settlor in order to enable such child to engage in a business venture; provided however, that the amount of principal so used shall not exceed in the aggregate an amount equal to fifty percent (50%) of such child's immediate or future share.[1]

Sol Pollock appears to have been a resident of Pennsylvania at the time the trust was created, and he directed that the trust be governed by the laws of that State. This provision was altered, however, by an amendment dated April 26, 1972, which expressed his intent that the trust be construed according to the laws of Florida, of which he had meanwhile become a legal resident. This amendment also substituted Sol Pollock for Arthur Pollock as trustee, and named the First National Bank of Hallandale, Hallandale, Fla., as successor trustee in the event of his incapacity or death. By a later amendment of May 26, 1972, the First National Bank of Hallandale was replaced by the First National Bank of Hollywood, Hollywood, Fla., as successor trustee.

Sol Pollock died on August 10, 1974, survived by his wife and two sons, Neal and Stephen. Mrs. Pollock was in relatively poor health at that time, having undergone two radical mastectomies, an operation on the lymph nodes under her arm, chemotherapy, and radiation therapy. The extent of her assets is not in evidence, although it appears that she owned the condominium apartment in which she resided and that the marital deduction trust, over which she had a right to call for distribution of principal during her lifetime as well as a general power of appointment, was in excess of $100,000. The record does not disclose whether she had medical insurance that might pay all or substantially all of her medical expenses.

------

[1] At a number of places in the copy of the typed trust instrument placed in evidence, there was underlining of various words, clauses, and sentences. There was no explanation of the source of such underlining, which appeared to have been subsequently added by hand, with perhaps the assistance of a straight edge. In the circumstances, no probative value is here given to the emphasis reflected in such underlining, and it is not reproduced herein.

At the time of his father's death, Neal Pollock was unmarried. He was an electronics engineer and worked, apparently as a Government employee, at an annual salary of approximately $20,000. His assets included investments with a value in the range of $30,000 to $35,000. Stephen Pollock was married; he worked as a registered pharmacist and manager of a drugstore. His wife was employed as a dental assistant, and their combined salaries totaled approximately $28,000. Although Stephen Pollock testified that he had additional income from assets, neither the amount of the assets nor the income was specified.

Robert Schneider, who in August of 1974 was employed as a trust officer of the First National Bank of Hollywood, was responsible for administration of the trust in issue. He had never met or communicated with Sol Pollock, but he did meet with Mrs. Pollock and Neal Pollock after Sol's death to discuss the distribution of income. He was instructed by Neal and Stephen Pollock "to defer to their mother." He determined that the sons were self-sufficient adults and that Mrs. Pollock was dependent upon the income of the trust. He later requested Neal and Stephen Pollock to provide him with a written statement confirming their desire that their mother receive the income distributions, which they did in a letter dated June 31, [sic] 1975.

It is not disputed that all income of the remainder trust was distributed to Shirley Pollock until her death on August 4, 1976, almost 2 years after the death of her husband. In addition, there is no evidence of invasion of principal on behalf of Mrs. Pollock or any other beneficiary.

On the estate tax return filed by petitioner, a credit of $19,274 was claimed under section 2013, I.R.C. 1954, which provides a credit for tax on prior transfers. The computation of the credit appears to have been based on the assumption that Mrs. Pollock was the sole income beneficiary of the remainder trust during her lifetime, and the amount of the credit thus claimed was equal to that portion of tax paid with respect to Mr. Pollock's estate that was allocable to the value of her alleged life estate in the remainder trust actuarially computed as of the date of her husband's death. In his notice of deficiency, the Commissioner disallowed the credit in its

entirety on the ground that Shirley Pollock's income interest in the remainder trust had no value.

OPINION

Through the medium of an insurance trust established September 12, 1968, Sol J. Pollock provided for the creation of two trusts to be funded at the time of his death out of the corpus of the insurance trust. The first such testamentary trust, created by article "First" of the insurance trust, is referred to as the marital trust. It provided for the payment of income to Mrs. Pollock for life and so much of the principal as she might from time to time request, with a general power of appointment over any portion of the principal remaining at her death. Since all parts of this trust, life estate as well as principal, were not subject to estate tax at Mr. Pollock's death by reason of the marital deduction, no credit in respect thereof was available against the tax imposed upon Mrs. Pollock's estate (sec. 2013(d)(3)), and petitioner has claimed none.

The controversy herein concerns the second, or remainder trust, created by article "Second" of Mr. Pollock's original trust. All the remaining assets not required for the marital trust were to be held in trust for the benefit of Mrs. Pollock and their children. The trustee was directed to "pay to or apply for the benefit of such of Settlor's wife * * * and Settlor's children as he selects and in such proportions as he determines without being required to maintain equality among them, so much of the income * * * as shall be necessary for their proper maintenance, support, health, education, or any other need which Trustee shall deem to be sufficient." The trustee was also authorized "in his absolute discretion" to use principal "for maintenance and support, for educational requirements, and health * * * of any income beneficiary," provided that the trustee was to consider the funds available to such beneficiary from other sources. But such payments for the benefit of the wife were to be made only from the marital trust as long as any funds remained therein. Furthermore, the trustee "in his absolute discretion" was authorized to use principal of the remainder trust to enable any child "to engage in a business venture," provided that the aggregate so used for any child should not exceed 50 percent of such child's immediate or future share. The ultimate disposi-

tion (after the life or income interests) of the remaining principal was stated to be for the benefit of the Pollocks' children or their descendants.

As set forth in our findings, Mrs. Pollock's estate, petitioner herein, claimed a $19,274 credit against estate tax liability on the theory that she was the *sole* income beneficiary of the remainder trust during her lifetime, and that such life interest was "property" within the meaning of section 2013(a) and (e), I.R.C. 1954.[2] Although these provisions were designed "to prevent the diminution of an estate by the imposition of successive taxes on the same property within a brief period" (S. Rept. 1622, 83d Cong., 2d Sess. 122 (1954)), it is undisputed that a life estate created by the transferor for the benefit of the decedent-transferee may nevertheless qualify for the credit notwithstanding that the life estate by its very nature expires with the death of the decedent-transferee and is thus not included in his gross estate. Sec. 20.2013–1(a),–5(a), Estate Tax Regs.; Rev. Rul. 59–9, 1959–1 C.B. 232.[3] The Government accordingly does not challenge the claimed credit if Mrs. Pollock were in fact given such a life estate by her husband. But it does contend that she was not given any exclusive life interest in the remainder trust, and that whatever interest

---

[2]SEC. 2013. CREDIT FOR TAX ON PRIOR TRANSFERS.

(a) GENERAL RULE.—The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death. If the transferor died within 2 years of the death of the decedent, the credit shall be the amount determined under subsections (b) and (c). If the transferor predeceased the decedent by more than 2 years, the credit shall be the following percentage of the amount so determined—

    (1) 80 percent, if within the third or fourth years preceding the decedent's death;

    (2) 60 percent, if within the fifth or sixth years preceding the decedent's death;

    (3) 40 percent, if within the seventh or eighth years preceding the decedent's death; and

    (4) 20 percent, if within the ninth or tenth years preceding the decedent's death.

         *          *          *          *          *          *          *

(e) PROPERTY DEFINED.—For purposes of this section, the term "property" includes any beneficial interest in property, including a general power of appointment (as defined in section 2041).

[3]The justification for this seemingly extraordinary result in respect of a statute that seeks to avoid double taxation is that "the terminable interest may have produced income that might be taxable in the [transferee-] decedent's estate." S. Rept. 1622, 83d Cong., 2d Sess. 122 (1954). See also *Holbrook v. United States,* 575 F.2d 1288, 1290 (9th Cir. 1978); *Estate of Sparling v. Commissioner,* 552 F.2d 1340, 1343 n. 8 (9th Cir. 1977).

was given to her had no ascertainable value as of the date of Mr. Pollock's death.[4] We agree with the Government's position.

By the very terms of the governing instrument, Mrs. Pollock was not the sole income beneficiary of the remainder trust during her lifetime. She was at most only one of three beneficiaries, and was not assured of even an equal one-third of the income. The trustee was accorded discretion as to the selection of and amounts to be distributed to the income beneficiaries ("pay to or apply for the benefit of such of Settlor's wife * * * and Settlor's children as he selects and in such proportions as he determines without being required to maintain equality among them"). To be sure, the instrument goes on to specify that the distributions shall be of "so much of the income as shall be necessary for their proper maintenance, support, health, education, or any other need which Trustee shall deem to be sufficient." And it may well be that these latter provisions furnish some standard for determining the amounts to be paid to any of the three potential distributees,[5] but even within any such standard, there is sufficient discretion granted the trustee to preclude a construction of the trust requiring him to allocate all of the income to the widow to the exclusion of the two children. There is nothing in the governing instrument that points to any intention on the part of the settlor to favor his wife over the children, and certainly nothing even suggesting that she was to be the sole income beneficiary. Had Mr. Pollock so intended, it would have been a simple matter to name her as the sole income beneficiary. The instrument reflects careful draftsmanship, and it is altogether too plain to resort to extrinsic evidence to interpret it and give it a meaning contrary to its unambiguous terms.[6] In this respect, this case is wholly unlike *Estate of Lloyd v. United States*, 228 Ct. Cl. _____ (1981), 650 F.2d 1196 (1981), where the widow was the only named life tenant and where the majority

---

[4] See sec. 20.2013–4(a), Estate Tax Regs.

[5] Cf. *Merchants Nat. Bank of Boston v. Commissioner*, 320 U.S. 256, 261 (1943); *Salisbury v. United States*, 377 F.2d 700, 703–708 (2d Cir. 1967); 4 J. Mertens, Federal Gift & Estate Taxation, sec. 28.38 (1959).

[6] See *Florida Bank at Lakeland v. United States*, 443 F.2d 467, 472 (5th Cir. 1971); *Knauer v. Barnett*, 360 So. 2d 399, 404 (Fla. 1978).

of the panel of the Court of Claims found (over the protests of a persuasive dissent) an intention to favor the widow over the possible remainder beneficiaries in relation to the invasion of corpus. Indeed, as will appear shortly, there is evidence in the instrument before us that Mr. Pollock was definitely concerned about the welfare of his children, who were remainder beneficiaries as well as income beneficiaries.

In article "Third" of the governing instrument, Mr. Pollock authorized the trustee "in its absolute discretion, to use principal for a child of Settlor in order to enable such child to engage in a business venture," provided only that the amount of principal so used "shall not exceed in the aggregate" 50 percent of such child's "immediate or future share." Under these provisions, the trustee would have been fully justified in reducing the principal by one-half for the benefit of the two sons for use in possible business ventures.[7] And if principal were so reduced, obviously, income realized by the remainder trust would be correspondingly reduced. Thus, even if the widow were to be treated as having something like a one-third interest in current income, that interest was subject to shrinkage by one-half by reason of this provision alone. But other provisions in article "Third" threaten even further shrinkage of an unmeasurable magnitude. The same article "Third" authorizes the trustee "in his absolute discretion, to use principal for maintenance and support, for educational requirements, and health, including but not limited to medical and surgical expenses, of any income beneficiary or any issue of Settlor," provided that in determining whether to use principal for such purposes the trustee was to consider other funds available to any such distributee, except that in the case of settlor's wife, such payments from principal could be made only after all funds from the marital trust had first been exhausted. Possible invasion of the principal for the benefit of

---

[7] We must of course interpret this broad grant of power in light of any bounds placed on the trustee's discretion by State law. Cf. *Robinson v. Commissioner*, 75 T.C. 346, 353 (1980). Our review of Florida trust law yields only the rule that a trustee must carry out his duties in good faith, judiciously, and with prudence, and that a court will not intervene unless there is failure to comply with this obligation. *Hoppe v. Hoppe*, 370 So. 2d, 374, 375 (Fla. Dist. Ct. App. 1978), rehearing denied 370 So. 2d 376 (Fla. Dist. Ct. App. 1979), cert. denied 379 So. 2d 206 (Fla. Sup. Ct. 1979); *Mesler v. Holly*, 318 So. 2d 530, 533 (Fla. Dist. Ct. App. 1975). Thus, an invasion of this nature, in accordance with the terms of the trust, would certainly be within the trustee's power.

either or both of the sons occasioned by unforeseen contingencies could easily consume the entire principal and leave no assets whatever in the remainder trust. Taking into account unanticipated events and the rather modest financial circumstances of the sons, the possibility of such invasion could not be ruled out and certainly could not be treated as "so remote as to be negligible." Cf. *Estate of Gooel v. Commissioner*, 68 T.C. 504, 509 (1977), affd. 639 F.2d 788 (9th Cir. 1981); *Estate of Buckwalter v. Commissioner*, 46 T.C. 805, 821 (1966).

After giving due weight to all of the foregoing considerations affecting the possible distribution of income to Mrs. Pollock from the remainder trust, it is our conclusion that when viewed as of the date of Mr. Pollock's death, Mrs. Pollock did not have, *under the governing instrument,* a fixed right to all of the distributable income or a determinable portion thereof for the remainder of her life. Her income interest in that trust did not have any ascertainable value and therefore cannot form the basis for any credit under section 2013(a).

We are, of course, fully aware that Mrs. Pollock did in fact receive the income of the remainder trust for the relatively brief period of her life that remained after the death of her husband. But her interest as of the date of her husband's death cannot be valued on the basis of hindsight.[8] See *Estate of Lloyd v. United States*, 650 F.2d at 1198–1199. We are also aware that her two sons instructed the trustee to distribute all the income to their mother. However, notwithstanding certain testimony suggesting otherwise, we are far from satisfied that the trustee would have paid the income over to the widow in its entirety in the absence of such direction or consent by the two sons. In our view, the sons acted out of filial devotion to their mother, who, it is plain, had but a limited life span ahead of her in view of her medical history. The record does not show that the sons were independently wealthy—indeed their income was modest and their assets were not shown to be of any major consequence. Nor is it clear on this record that the widow's needs could not have been satisfied adequately out of

---

[8]Even if her income interest were valued on the basis of hindsight, she survived her husband only about 2 years, and a 2-year interest in the income of the remainder trust was obviously nowhere near as great as the actuarially computed life interest of a 54-year old woman, which petitioner apparently used in the computation of the sec. 2013 credit.

her own assets and the marital trust. She owned the condominium apartment in which she resided, and the record fails to show that her medical expenses were not met entirely, or at least in greater part, by health insurance. Indeed, the estate tax return discloses a medically associated indebtedness in the amount of only $40 for nursing. However, regardless of these considerations, it is clear to us, on the basis of the unambiguous terms of the trust instrument, that Mrs. Pollock's income interest was not susceptible of valuation. The Commissioner's determination must be approved.

*Decision will be entered under Rule 155.*